# BURLINGTON NISI PRIUS.

## DECEMBER TERM, 1793.

[439]                THE STATE v. WILSON.

1. If a man lifts up the latch of an outward door, or if, the outward door being open, he enters and unlatches or unlocks a chamber door, it is such a breaking as is necessary to enter into the crime of burglary.

2. If all the doors are open and a thief enters, though he should afterwards break open a chest or cupboard, it is not such a breaking as to constitute burglary.

3. Before one can be convicted of burglary there ought to be evidence to prove that the doors were shut.

4. If one takes the goods of another out of the place where they were put, though he is detected before they are actually carried away, the larceny is complete.

The prisoner, Wilson, was indicted at a court of Oyer and Terminer, held before KINSEY, C. J., at Woodbury, in the county of Gloucester, for burglary. The indictment charged him with having feloniously and burglariously broken into and entered the dwelling-house of one Daniel Cooper, during the night, and of having feloniously stolen several articles of clothing and pieces of money, the property of the said Daniel Cooper. To this indictment the defendant pleaded not guilty, and upon the trial the following circumstances appeared by the evidence of Cooper:

That on the night upon which the burglary was laid to have been committed, the witness was awakened by a noise in the house, and upon hearing a further noise, he got up, went to the window, where hung a quantity of yarn, some of which appeared to have been removed. On turning round, he observed a chest open; he put his hand into it, and im-

mediately remarked another person withdrawing his hand from the chest. The other caught the witness round the lower part of his body, upon which the witness struck him. A scuffle ensued, and at length was terminated by the witness succeeding in throwing the intruder upon his back, jumping upon him, and holding him until some of the members of the family arrived. On lighting a candle the witness found his jacket on the floor, and a number of small pieces of silver scattered about the room. On examining his clothes, he discovered that his money and papers had been taken out of his pocket, and his silver knee-buckles were missing. The witness did not immediately recognize the prisoner, but soon recollected him to be a man who had lodged in the house the night before. The witness found his watch on the floor, which he had left, when he went to bed, in his breeches pocket ; and three pieces of linen and some stockings on the floor, at the end of the chest. The prisoner was tied ; he appeared so intoxicated that he could with difficulty stand, but upon the [440] witness giving him three or four strokes with a whip, he jumped up and appeared sober. About an hour or two after some one remarked that the prisoner had something in his mouth, and upon the witness going to examine, the prisoner took out of his mouth one dollar, a half-dollar, and two pistareens. The witness had gone to bed about half-after ten o'clock, and when he went to look at the clock afterwards it was about twenty minutes after two. The witness was the last person in the house who went to bed, and had fastened the outer and inner door himself, according to his usual custom.

These facts were corroborated by the testimony of Richard Perry, and Peter Kline, who slept in the house, and were awakened by the noise, came down and assisted in detaining the prisoner.

KINSEY, C. J., delivered the following charge to the jury :

The prisoner at the bar stands indicted for burglary. The indictment charges that he, on the 13th of December, 1792,

about one in the morning of that day, with force and arms, &c., the dwelling-house of Daniel Cooper feloniously and burglariously did break and enter, and certain articles enumerated in the indictment, the property of the said D. Cooper, did steal, take, and carry away.

To this indictment he has pleaded not guilty, and whether the evidence produced on the part of the state has been sufficient to establish his guilt, is the question which you have been sworn to try.

This question, like most others of a criminal nature, is compounded both of law and fact; of the latter you are in all cases the constitutional judges, and although the court in stating the law, may perhaps be compelled to touch upon some of the facts, yet they must ultimately be left to your determination.

The crime of which the prisoner stands accused is technically called burglary, and is defined to be, the breaking and entering into the mansion house of another, with the intent to commit some felony therein, and that in the night time.

This definition is an accurate one, and should be carefully kept in mind, for almost every word of it is significant and important. Before any man can be legally convicted of this [441] crime, therefore, these five circumstances must be proved : 1st. There must be what the law calls a breaking. 2d. There must be an entry. 3d. The breaking and entry, or one of them, must be in the night. · 4th. It must be done in a mansion-house. 5th. It must be done to the intent of committing some felony therein.

If the testimony which you have heard is to be believed, three of these five requisites need engross but little of your attention, because it is evident that the prisoner had entered the lodging room of the prosecutor, which was a part of the mansion-house, and was actually detected there in the night time.

These three particulars seem to be placed beyond a question, if you believe the witnesses ; and, having disposed of them, there remain but two others, viz., the breaking, and

the intention with which the breaking was done, to occupy your attention.

On these points it may be proper to be a little more particular, for if any doubts can arise in the case, it must be upon one or both of these requisites. As to the breaking, I take the law to be that, by this term, it is not meant to imply any actual violence or force. If a man lifts up the latch of an outward door, or if an outward door, being open, a thief enters and unlatches or unlocks a chamber door, with a felonious intent, in either case his act comes up to the idea affixed by the law to the word breaking, so as to constitute the crime of burglary. 1 *Hawk.* 160, *b.* 1, *c.* 38, § 4; 1 *Hale* 553. If, however, all the doors be open, and the thief enters through an open door, and after getting into the house should break open a chest or a cupboard, even fixed in the wall, this is not such a breaking as the law requires as one of the ingredients of a burglary.

A man's house is said to be his castle—its security must not be lightly invaded; and to preserve this security and this sanctity, the law has created safeguards, and imposes severe penalties upon their infringement. This is particularly the case in the night, a season appointed for rest, when a man is usually incapable of making any defence, and when assistance is frequently remote and contingent. But it is necessary, be-[442]-fore you find the prisoner guilty upon this indictment, that you should be satisfied the doors of this house were shut, and were opened by the prisoner, or with his concurrence or connivance.

If these circumstances are established to your satisfaction, it is a breaking sufficient to constitute one of the ingredients of burglary; if they are not, though the prisoner may be guilty of larceny, there is no burglary proved. It is necessary to recapitulate the testimony which bears upon this point—you will judge how far it ought to operate.

The last thing to be considered, supposing the breaking to be proved, is, was the felony actually committed so as to manifest the intention with which he entered the house? The

designs of the heart can rarely be proved in a direct manner by the testimony of witnesses. When a man designs to perpetrate a scheme of wickedness, he seldom communicates his intention, unless to an accomplice; hence, the intent must, in most cases, be collected from the circumstances. These may sometimes prove deceptive, but when, without any forced construction, they speak the intention in a language clear and intelligible, they may be relied on as the best evidence which the nature of the case will admit of.

It is impossible to lay down any general rule, or to declare from what circumstances particular intentions are to be inferred. No two cases are exactly similar, and it is the business of the jury to form their opinion from a serious and deliberate consideration of the facts which appear in the testimony. It is, however, a good rule, and it is also a humane rule, to which every virtuous man will assent, that where reasonable doubts exist, the jury, particularly in capital cases, should incline to acquit rather than condemn.

Facts are, however, the fairest criterions from which to infer the intention: I mean, from the facts which occurred in the house, we may presume the intentions and views with which he entered it.

On this point you are, in the first place, to examine the facts, to weigh the evidence, and then to ask yourselves these questions—1st. Did the prisoner open any chest, or appropriate to himself any part of the property of the owner, and mani-[443]-fest any intention to steal it—or rather did he actually steal it, for the indictment charges that the larceny was actually committed?

Upon this I must observe if one takes the property of another from the place where it was situated, and removes it to another, as he who takes goods out of a trunk and lays them on the floor, and is surprised and detected before he goes off, this is larceny. It is a sufficient carrying away if it be done with an intent to steal.

In the next place you are to ask yourselves whether the facts detailed in the evidence, show clearly, either collectively

The State v. Wilson.

or separately, that the design of the prisoner was actually to steal, and was the theft actually committed?

Considering the particular circumstances of this case, I think it not altogether unimportant further to observe, that when occurrences of this kind happen they naturally engross the thoughts and conversation of the neighborhood. Many persons are fond of dwelling upon and relating the circumstances of such a transaction, and reports frequently obtain currency which rest upon no foundations of truth. This case especially has engaged the attention of the community, and it is by no means improbable that some accounts of it have reached the ears of all or the greater part of you. These reports and statements should not be permitted to weigh in your minds; your verdict should be founded altogether upon what you have heard in this place, and the solemn oaths which you have taken expressly require this. You should enter upon the consideration of the question without any foreign impressions.

In all capital cases, moreover, the proofs should be full and clear. No presumption ought to be admitted but that which is called violent. The law presumes every man to be innocent until there is proof of his guilt. It never supplies by supposition or intendment any chasms or deficiencies in the testimony, more particularly when the punishment of death is to attend upon the conviction.

You are now to deliberate upon the evidence. If on consideration you shall think yourselves bound to say that the prisoner, in the night time, entered the mansion-house of [444] Daniel Cooper, with an intention to commit a felony therein, and did commit it, you will find him guilty of the crime of which he stands indicted. If you entertain any doubts, I do not mean doubts wantonly raised, but such as arise from a deliberate consideration of the testimony, these doubts should be determined in favor of life—the prisoner should be acquitted.

The jury found a verdict of guilty, and the Chief Justice pronounced sentence of death.