[Crim. No. 5839.   Second Dist., Div. Two.   Sept. 13, 1957.]

THE PEOPLE, Respondent, v. ROOSEVELT SEARCY,
Appellant.

Roosevelt Searcy, in pro. per., for Appellant.

Edmund G. Brown, Attorney General, and William E. James, Deputy Attorney General, for Respondent.

ASHBURN, J.—Defendant was convicted of burglary in the second degree (Pen. Code, § 459), with a prior conviction of burglary in the State of Louisiana found to be true. Though represented by the public defender at the trial, appellant appears in propria persona in this court. His brief urges insufficiency of the evidence to support a conviction and to that end refers to a number of alleged conflicts in the evidence.

Mrs. Florita Toller and her husband were the owners of an apartment house known as numbers 539-541 South Crocker Street, in the city of Los Angeles. It was being condemned by the county of Los Angeles and the occupants had vacated it before June 1, 1956, the date of the burglary. The doors were locked and the windows were covered with boards. The building had four walls and a roof and contained furniture and furnishings.

So far as pertinent, burglary is defined by section 459, Penal Code: "Every person who enters any house, . . . or other building, . . . with intent to commit grand or petit larceny or any felony is guilty of burglary." █ Habitation of human beings is not of the essence. (*People* v. *Coffee*, 52 Cal.App. 118, 120 [198 P. 213].) The "structure need only be one having four sides and a roof" (*People* v. *Gibbons*, 206 Cal. 112, 114 [273 P. 32]; see also 9 Cal.Jur.2d, § 8, p. 457), and the value of the property is immaterial, for the intent to commit either grand or petit larceny is enough.

On May 31, 1956, at about 7 a. m. defendant, another man, and a white woman, visited Julius Kashkin who was engaged in renting trucks at a location which was about two blocks from the burglarized premises. The woman rented the truck and told Kashkin that defendant would drive it. Kashkin told her to return it before 6 o'clock that evening and she said they would do so, but it was not done. Kashkin, after his place of business closed at 6:30 p. m., saw the truck parked on a vacant lot in the 500 block of South Crocker Street. It was then empty and no one was in sight. On the

next morning, June 1st, at 6 a. m., Kashkin again saw the truck parked in the same lot and immediately behind 541 South Crocker Street. Defendant and another man were loading the vehicle, which contained water heaters and ice boxes. Kashkin called defendant to him and asked why he had not returned the truck. Defendant said he did not finish loading the stuff he had to move but would do so as soon as he got rid of the stuff then on the truck. An hour later he came to Kashkin's place for gas, saying that somebody had drained the gas out of the truck while it was parked overnight. That evening, the truck not having been returned, Kashkin found it parked in the same place. It was then empty. He took possession of it. Mrs. Toller testified that she had given no permission to anyone to take any of the contents of the building but when she next visited it after May 16th the doors had been broken open and the following items were missing: Three ice boxes worth $60 each; two hot water heaters worth $200 each; two bathtubs of unknown value; four sinks; miscellaneous linens, sheets, pillow cases, towels, bedding, beds and springs, mattresses, light fixtures, paint and lumber, etc., adding, "my gosh, they stripped the house."

Defendant was arrested on June 13th. At first he gave his name as Johnny Johnson but then admitted it to be Roosevelt Searcy. Asked whether he had rented a truck and moved the furniture out of the houses he said: "That is your job to find out." He was then taken to Kashkin's place and identified by that witness. Asked by Officer Bates if he had taken any bathtubs or water heaters out of the houses he said: "No, but I hustled some bath tubs and water heaters and I sold them at A-1 Iron and Metal." He further claimed, however, that he did not get them from 539 or 541 Crocker Street.

In a later conversation Bates, at the interview room in the central jail, laid his reports down in front of defendant and said: "Roosevelt, we have a report here wherein there was $1,100 worth of stuff taken out of those buildings. I don't know if you got it all, but I am certain you got part of it. Now, go through the report and you tell me what you got." He was then asked about various items and denied taking some of them but admitted that he had taken four sinks, two or three bathtubs, two water heaters, one gas heater and three ice boxes. He said he sold them for scrap iron and received $18.40 for the load. He asserted that he had entered through an unlocked door, but also conceded:

"I may have taken some of the stuff out through a window."
■ The entry into the building with intent to commit larceny clearly appears from the testimony just summarized. ■ Defendant did not testify. That fact lends weight to the evidence presented by the prosecution. (*People* v. *Ashley*, 42 Cal.2d 246, 268 [267 P.2d 271]; see also *People* v. *Steccone*, 36 Cal.2d 234, 239 [223 P.2d 17].) The evidence left no room for an acquittal.

Appellant's insistence upon conflicts in the evidence is directed toward minor discrepancies in the testimony which would be of no substantial consequence if we were free to weigh the testimony and its inferences. The argument proceeds in manifest ignorance of the limitation upon the function of a reviewing court when the sufficiency of the evidence is challenged. ■ "The court on appeal 'will not attempt to determine the weight of the evidence, but will decide only whether upon the face of the evidence it can be held that sufficient facts could not have been found by the jury to warrant the inference of guilt. ■ For it is the function of the jury in the first instance, and of the trial court after verdict, to determine what facts are established by the evidence, and before the verdict of the jury, which has been approved by the trial court, can be set aside on appeal upon the ground' of insufficiency of the evidence, 'it must be made clearly to appear that upon no hypothesis whatever is there sufficient substantial evidence to support the conclusion reached in the court below. . . . We must assume in favor of the verdict the existence of every fact which the jury could have reasonably deduced from the evidence, and then determine whether such facts are sufficient to support the verdict.' ■ If the circumstances reasonably justify the verdict of the jury, the opinion of the reviewing court that those circumstances might also reasonably be reconciled with the innocence of the defendant will not warrant interference with the determination of the jury." (*People* v. *Newland*, 15 Cal.2d 678, 681 [104 P.2d 778].)

In a reply brief appellant asserts that he was arrested on June 13, 1956, and not arraigned until June 19, 1956, a lapse of six days. Relying upon *Mallory* v. *United States*, 354 U.S. 499 [77 S.Ct. 1356, 1 L.Ed.2d 1479], he asserts that the judgment should be reversed because of this delay in arraignment. There is no showing in the record that there was any delay in taking defendant before a magistrate. For that primary reason the cited case is not applicable. More-

over, it deals with a confession obtained during a period of unlawful detention and received in evidence over objection. In the case at bar the statements of defendant which amounted to a confession were received in evidence without objection. Moreover, the Mallory decision is avowedly based upon a construction of the pertinent provisions of the federal rules of criminal procedure. Reliance upon the Mallory decision is misplaced in the case now before us.

There is no semblance of merit in this appeal.

Judgment affirmed.

Moore, P. J., and Fox, J., concurred.