JOHN PRESTON POFF *v.* STATE OF
MARYLAND

[No. 276, September Term, 1967.]

Decided May 16, 1968.

The cause was argued before MURPHY, C. J., and ANDER-SON, MORTON, ORTH, and THOMPSON, JJ.

*John J. Mitchell* for appellant.

*Bernard L. Silbert, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Arthur A. Marshall, Jr., State's Attorney for Prince George's County,* and *Benjamin Wolman, Assistant State's Attorney for Prince George's County,* on the brief, for appellee.

THOMPSON, J., delivered the opinion of the Court.

John Preston Poff, the appellant, was convicted of storehouse breaking in the Circuit Court for Prince George's County, Judge Roscoe H. Parker presiding with a jury. Poff complains that the conviction for storehouse breaking instead of breaking a "dwelling" was contrary to law; that he was subject of a police entrapment; that he was prejudiced in the eyes of the jury by the arrest of his wife in the courtroom while he was being tried, and by the resulting colloquy between the judge and himself.

In August of 1966 Detective James Fitzpatrick of the Prince George's County Police made arrangements to "lease," for a few days, an apartment in the Glassmanor apartment project

from the resident manager, Elmer Purvins. Fitzpatrick and his partner, Detective Richard Shaner, then moved some guns, a television set and a few other items into the furnished apartment. The two policemen occupied the apartment for three days. They arrived early in the morning and left in the evening of each day. While using the apartment the officers ate hamburgers and cookies and occasionally slept there during the day. On the third day Fitzpatrick placed a call to the company which owned the furniture and he asked for a man to come to the apartment and repair their rented furniture. Subsequently, one Mileski arrived to make the repairs. After Mileski started a conversation about the guns Fitzpatrick told him that he would soon be leaving and would be out all afternoon. Mileski left, but before sunset he returned with the appellant, Poff. They knocked on the door several times but when there was no answer, they forcibly opened it. When they entered the apartment, the policemen, previously concealed, identified themselves and in the resultant turmoil Poff and Mileski were shot by the policemen who were attempting to arrest them. Poff was indicted for storehouse breaking and house breaking. He was found guilty only of the former charge.

Poff first complains that his conviction for storehouse breaking is contrary to law in that he did not break a storehouse but a dwelling; and that his motion for acquittal on the charge of breaking a storehouse should have been granted.

In *Hackley v. State,* 237 Md. 566, 207 A. 2d 475 the Court of Appeals of Maryland discussed the meaning of "storehouse" as used in Md. Code, Art. 27, § 32 (Breaking with intent to steal more than $100.00) which is the statute involved in the current indictment; as used in § 33 (Breaking and stealing more than $5.00) ; and as used in § 342 (Breaking with intent to steal less than $100.00, or stealing less than $5.00), concluding that the term "storehouse" should be given the same meaning in all sections. The Court suggested that the three sections covered all buildings, other than dwelling houses citing several earlier Maryland cases on the subject.

In *Buckley v. State,* 2 Md. App. 508, 235 A. 2d 754, this court construing § 32, *supra* held that a "warehouse" as used in an indictment thereunder included a fraternity house being used

as a meeting and recreational facility. We said in *Buckley v. State, supra*, 2 Md. App. at page 511 : "[E]ven though the building was originally designed as a dwelling, in fact, at the time of the alleged breaking it was being used exclusively as a meeting and recreational facility by the fraternal organization." To the same effect see Perkins, *Criminal Law*, Ch. 3, § 1 at 159, 2 Wharton, *Criminal Law and Procedure*, § 423 at 45.

The present appeal will, therefore, be determined by whether or not the apartment at the time of the offense was being used as a "dwelling house" or as a place for storage. The facts show that the apartment was vacant at the time the officers "rented" it for the obvious purpose of setting a trap for Mileski. Although they held it out to Mileski as a "dwelling" we have no difficulty in concluding that, in fact, it was not a "dwelling" but simply a place in which furniture was stored pending its rental by a new tenant.

The test as to whether or not a building is a "dwelling house" is whether or not it is used regularly as a place to sleep. No building becomes a "dwelling" by reason of the fact that someone may sleep there on rare occasions or take an occasional nap there, as in the current appeal. Perkins, *Criminal Law*, Ch. 3, § 1 C (1), at 158, 2 Wharton, *Criminal Law and Procedure*, § 433 at 45, 13 Am. Jur. 2d *Burglary* § 3 at 321, Clark and Marshall, *Law of Crimes*, § 13.01 at 874.

We conclude, therefore, that Poff was properly convicted of breaking a "storehouse".

Poff's second contention is that his motion to acquit should have been granted because of entrapment by the police officers. Entrapment by police presupposes that the police officers solicited or procured the commission of a crime. The mere fact that the officers laid a trap and provided Poff with an opportunity to commit a crime does not meet this test. Maryland authorities have been collected by this court in *Dolan v. State*, 1 Md. App. 292, 229 A. 2d 443 and in *Jarrett v. State*, 1 Md. App. 448, 230 A. 2d 683.

Poff next contends that his case was prejudiced in the eyes of the jury by the arrest of his wife in the courtroom, and by a colloquy between the trial judge and the appellant in the jury's presence. A reading of the record discloses that although the

arrest occurred in the courtroom the jury was not aware of it. Although Poff alleges that his case was prejudiced by the arrest of his wife, who was a witness, there is no suggestion that he was in any way deprived of her testimony. We do not see how the jury could be prejudiced by something of which they were not aware.

Poff alleges that a verbal exchange concerning the arrest prejudiced the jury. During a bench conference, the following was overheard by the jury:

> "THE COURT: This man over next to the man going out, get him, Mr. Sheriff. Hold him.
>
> "JOHN PRESTON POFF: Your Honor, this is too much, you know. No, this is not even fair to my case in this.
>
> "THE COURT: Mr. Poff, you might be guilty of contempt of Court if you don't sit down.
>
> "JOHN PRESTON POFF: Can I go to the bathroom, please?
>
> "THE COURT: No. You sit where you are.
>
> "I will take a five-minute recess. Bring that man in here, in chambers."

Out of the presence of the jury it was ascertained that the court observed a spectator in the courtroom attemping to give signals to Poff that his wife had been arrested by a deputy sheriff who did not know that she was a witness in the case. Immediately after the jury was returned to the courtroom, the court made the following statement:

> "THE COURT: Members of the jury, by way of explanation to explain what happened a moment ago, the Court observed someone in this courtroom making signals to the defendant in this case and obviously trying to communicate with the defendant while trial was in progress. That is against the law and against the proper decorum of court. For that reason we had to investigate at the time what was going on.
>
> "But you are not to pay any attention to that so far as your consideration of this case. Put it out of your mind so far as determining whether or not this de-

fendant is guilty. He has done nothing in regard to this incident. It was only a spectator in this court-room."

If there were any prejudice to Poff's position we think the prompt instruction of the trial court removed it. See *Carroll v. State,* 3 Md. App. 50, 53, 237 A. 2d 535, *Reeves v. State,* 3 Md. App. 195, 202, 238 A. 2d 307.

*Judgment affirmed.*