## JOHN GEORGE MARSTON *v.* STATE
## OF MARYLAND

[No. 290, September Term, 1969.]

*Decided April 14, 1970.*

The cause was argued before MURPHY, C.J., and ANDERSON, MORTON, ORTH, and THOMPSON, JJ.

*Rolf A. Quisgard* for appellant.

*Clarence W. Sharp, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Samuel A. Green, Jr., State's Attorney for Baltimore County,* and *John J. Lucas, Assistant State's Attorney for Baltimore County,* on the brief, for appellee.

THOMPSON, J., delivered the opinion of the Court.

John George Marston, the appellant, was convicted of burglary in a court trial in the Circuit Court for Baltimore County. He was tried jointly with his brother, Donald Edward Marston, and both were sentenced to terms of three years. On appeal appellant contends: (1) the building broken into was not a "dwelling", (2) there was insufficient evidence of appellant's felonious intent. Since this Court agrees with appellant's first contention, there will be no need to discuss the second.

At approximately 10:00 P.M. on March 22, 1969, Donald Marston, the appellant's brother, was seen going to the rear of the building at 439 Community Drive in Baltimore County, Maryland. A neighbor called the police after hearing breaking glass. While Donald was out of sight in back of the building, the appellant continued to circle the block in his automobile, blinking his automobile lights each time he passed in front of the building at 439 Community Drive. This blinking occurred between two and five times. When the police arrived they found Donald Marston wandering in the street apparently pointlessly; he had been drinking. The appellant was found a short distance away asleep in his automobile; he also had been drinking. At the rear of the building in question, the police officers found a screen door slashed, a window pane in the door broken, and the door itself open. Apparently nothing was missing. At the time Donald Marston was apprehended, he had in his possession a paring knife and a ball peen hammer.

Miriam Clayton, the owner of the property, testified she had employed Donald Marston to do work on the building at two separate periods. The first period was

from February to April of 1968. The second period was from June to November of 1968. During the time he worked on the house, Donald Marston was allowed to use it as his dwelling, entering by use of his own key. After Mrs. Clayton became offended at Donald Marston's drunken conduct, in November, 1968, she told him to stop working on the house, to sleep there no longer, and to return the keys to her. He returned the keys on January 12, 1969, at the Eastern Police Station after Mrs. Clayton had procured some type of summons, not described in the record, from the court. Although the house was furnished, Mrs. Clayton stated that she never lived there and indicated clearly she never intended to live there. During Mrs. Clayton's ownership, Donald Marston appears to have been the only occupant.

Both appellant and his brother testified. The appellant stated he was under the impression his brother still lived at 439 Community Drive and had his own key to enter the building. Appellant did not go into the building because he had been forbidden to come on the property by Mrs. Clayton. He explained that he blinked his lights as a signal to his brother that he planned to sleep in his car, which was his usual habit when drunk.

Donald Marston explained that although he no longer worked for Mrs. Clayton, he had often gone to the building on Community Drive to sleep off his excessive drinking. Both appellant and his brother denied all intent to commit a felony within the building.

On numerous occasions this Court has concerned itself with what is a "dwelling house." In *Jones v. State,* 2 Md. App. 356, 360, 234 A. 2d 625 at footnote one, the Court said: "If a building is 'used as a place to sleep in' it may be a dwelling house." In *Buckley v. State,* 2 Md. App. 508, 235 A. 2d 754, the Court pointed out that even though a certain building was originally designed as a dwelling, at the time of the breaking it was in fact being used exclusively as a meeting and recreational facility by a fraternal organization and hence was no longer a dwelling. *Buckley* shows that the mere fact a building was

originally designed as a dwelling is not controlling when its later use is no longer as a dwelling. The clearest test of what is a dwelling house is in *Poff v. State,* 4 Md. App. 186, 189, 241 A. 2d 898 wherein the Court said:

> "The test as to whether or not a building is a 'dwelling house' is whether or not it is used *regularly* as a place to sleep. No building becomes a 'dwelling' by reason of the fact that someone may sleep there on rare occasions or take an occasional nap there, as in the current appeal. (Authorities omitted; emphasis added).

In the instant case, there must have been occupancy by someone other than the appellant or his brother, Donald Marston, before the conviction may be affirmed. If the occupancy is by appellant or by his codefendant, then the dwelling becomes their dwelling, and at common law one could not be guilty of burglary of his own dwelling. If the dwelling is used as the constructive dwelling of Mrs. Clayton, the owner, because she allowed her servant, Donald Marston, to sleep there, then the use as a house terminated in November, 1968, when Mrs. Clayton evicted Donald Marston and later instituted judicial process to recover the keys from him. Thus, the constructive dwelling of the owner, if any, had clearly terminated approximately three months before the present crime. Thus, at the time of the breaking, the owner was not living in the building herself, and specifically had not authorized anyone, including the Marstons, to sleep there. In view of these facts, the building is not a dwelling as defined in *Poff v. State, supra.* The fact that Donald Marston occasionally slept in this building while recovering from his excessive drinking does not convert it into a dwelling house, since by *Poff,* the mere fact that one sleeps there "on rare occasions" does not convert the building into a dwelling.

The record reveals no express intention by the owner to rent the building as a dwelling in the future. However, even if there were some intent by the owner to rent the

building as a dwelling, this intent would not make it a dwelling on the night of the breaking since in *Poff, supra,* it was clarified that a building devoid of occupants between rentings is not a dwelling, but simply a place in which furniture is stored pending rental by a new tenant.

At trial, the State relied on the case of *Hall v. State,* 1 Md. App. 392, 230 A. 2d 473. The case is inappropriate for the present facts. *Hall,* after defining common law burglary, mainly concerns itself *inter alia* with drunkenness as a defense. No such defense is raised in this appeal.

The trial court relied on the cases of *McGraw v. State,* 234 Md. 273, 199 A. 2d 229, *Hannah v. State,* 3 Md. App. 325, 239 A. 2d 124, and *Dortch et al v. State,* 1 Md. App. 173, 229 A. 2d 148. The trial court said:

> "If you can have a breaking and entering of a church [which the above cases so hold] as a violation of the charge of common law burglary, you certainly can have the breaking and entering of a home designed to be used as a home and furnished to be used as a home, not used for any other purpose, even though at the moment it was not occupied by anyone."

It is true that a church can be a subject of common law burglary, and that a temporarily unoccupied dwelling (when the occupant intends to return to it) may be the subject of common law burglary. It is not true that a building in which no one dwells can be the subject of common law burglary. The trial court was apparently led astray by the State's argument confusing a temporarily unoccupied building that is in fact regularly used as a dwelling with a building which has been abandoned as a dwelling. The former is a proper subject of burglary; the latter is not.

On appeal the State cites the following authorities to support its proposition that the building in question is in fact a dwelling: Annotation: "Vacancy or Nonoccupancy

of Building as Affecting its Character as a 'dwelling' as regards Burglary" 85 A.L.R. 428; a similar annotation regarding arson in 44 A.L.R.2d 1456; Annotation: "What is a 'building' or 'house' within Burglary Statutes" 78 A.L.R.2d 778; Perkins, *Criminal Law*, Ch. 3, § 1C, p. 159; and the cases of *West Virginia v. Bair*, 112 W. Va. 655, 166 S. E. 369, *Schwabacher v. Illinois*, 165 Ill. 618, 46 N. E. 809; *People v. Searcy*, 153 Cal.App.2d 799, 314 P. 2d 1002; *Dover Housing Board v. Colbath*, 106 N. H. 481, 213 A. 2d 923.

In the annotation in 85 A.L.R. 428, at 429 the following general rule, consistent with our prior decisions, is stated:

> "(I)f one breaks into a dwelling house in the nighttime for a felonious purpose, though the owner and his family be temporarily absent and no one happens to be in the house at the time, this offense is still held to be burglary. The owner, however, must have quited [sic] the house *animo revertendi*, to make the breaking unlawful. . . . but if the owner locks up the house and leaves it with a settled purpose not to return, the house ceases to be a dwelling house in the sense necessary to make unlawful breaking burglary. 4 RCL Burglary, § 17, pp. 426, 427."

The *Bair* and *Schwabacher* cases are cited within this annotation. The annotation at 44 A.L.R.2d 1456 (concerning dwellings and arson) contains similar statements of the general rule. The annotation at 78 A.L.R.2d 778 concerns what physical characteristics make a building a house. The *Dover Housing Board* case deals with the interpretation of a New Hampshire Building Code, which definition is not proper precedent for cases based on a common law definition. *People v. Searcy, supra,* is not alone sufficiently persuasive to overrule our prior decisions.

Under the guidelines of *Gray v. State,* 254 Md. 385,

255 A. 2d 5, we find there is no probability of additional probative evidence being available to the State to justify a retrial. Mrs. Clayton, the owner, has already testified that she never lived in the building and had not authorized anyone to live in the building for approximately five months before the crime. The only available additional item is for Mrs. Clayton to testify (if such is in fact true) that she intended to rent or sell the building in the future as a dwelling. Under *Poff v. State, supra,* this is not sufficient to make the building a dwelling at the time of the crime.

> *Judgment reversed.*
> *Case remanded for entry of*
> *judgment of acquittal.*