## DAVID JOHN VUCCI *v.* STATE OF MARYLAND

[No. 241, September Term, 1971.]

*Decided December 21, 1971.*

The cause was argued before MURPHY, C.J., and MOY-LAN and GILBERT, JJ.

*Murray L. Deutchman* for appellant.

*James G. Klair, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Andrew L. Sonner, State's Attorney for Montgomery County,* and *Gerard E. Mitchell, Assistant State's Attorney for Montgomery County,* on the brief, for appellee.

MOYLAN, J., delivered the opinion of the Court.

The appellant, David John Vucci, was convicted in the Circuit Court for Montgomery County by a jury, presided over by Judge H. Ralph Miller, of grand larceny. Upon this appeal, he raises three contentions:

(1) That the trial court erroneously denied him a *de novo* hearing on the admissibility of physical evidence, after an earlier pretrial hearing on the same issue decided the issue adversely to him;

(2) That the trial court erroneously permitted a photograph of the allegedly stolen articles to be introduced rather than the actual articles themselves; and

(3) That the evidence was legally insufficient to prove that the goods stolen were of the value of $100 or more.

The crime in this case occurred on October 7, 1970. The appellant was tried and convicted on March 4, 1971. Prior to trial, a hearing was held on February 25, 1971, before Judge Irving A. Levine, of the Circuit Court for Montgomery County, upon the appellant's motion to suppress evidence. Judge Levine ruled that the evidence was admissible.

Maryland Rule 729 g 2 provides:

"If such motion or petition is denied prior to trial of the criminal case, the pretrial ruling *shall be binding* at the trial unless the trial judge, *in the exercise of his discretion* grants a

> hearing *de novo* on the defendant's renewal of his motion or objection. A pretrial ruling, denying a motion or petition to suppress, exclude or return property seized, shall in any event be reviewable on appeal to the appropriate appellate court or on a hearing on a motion for a new trial." (Emphasis supplied.)

The appellant does not claim that Judge Levine was wrong in ruling, at the pretrial hearing, that the evidence was admissible. His claim goes only to the refusal of the trial judge to relitigate the issue which had already been passed upon by Judge Levine.

At the trial, extensive testimony had already been taken from Woodrow Hurdle, a civilian witness who observed what appeared to be a breaking in at the construction site near his home and who notified the police thereof; from Detective Corporal George W. Heflin, of the Montgomery County Police Department, who responded to the scene after being summoned by Mr. Hurdle; and from Officer John Shigo, of the Montgomery County Police Department, who also responded to the scene after receiving a radioed bulletin to do so, before the appellant made his request for a *de novo* hearing on the admissibility of the physical evidence. The three witnesses had established that a probable breaking and entering and larceny had occurred at the construction site, that the appellant and two other persons had been seen walking from their automobile into the closed construction site and back to the automobile carrying something in their hands; that a door leading to the apartment complex under construction showed signs of being tampered with and that a toolbox on the inside of the building showed signs of having had its lock and hasp broken off; that the appellant and the two other persons had been detained by Corporal Heflin and Officer Shigo; that a flashlight had been shined into the interior of their automobile; and that tools, including a radial-type saw and a power screwdriver, had been observed lying on the back

seat. Photographs of the tools which were seized from the automobile were offered as State's Exhibits No. 8 and 9 for identification, at which point the appellant for the first time requested the hearing *de novo* on the constitutionality of the search.

The appellant argued to the trial judge that the testimony of Corporal Heflin at the pretrial suppression hearing had been contradictory to his testimony at the trial on the merits in one limited but significant regard. At the trial, the testimony of both Corporal Heflin and Officer Shigo was that Corporal Heflin had informed Officer Shigo of his observations about the door that had been tampered with and the toolbox that had been broken open before Officer Shigo shined his flashlight into the automobile and then seized the tools therefrom. The appellant contended that Corporal Heflin's testimony at the pretrial suppression hearing had been to the effect that Officer Shigo and other uniformed officers already had one tool in hand and were copying down its serial number at the time when Corporal Heflin returned from making his observations inside the construction site. A review of the transcript of Corporal Heflin's testimony at the pretrial suppression hearing reveals, however, no clear contradiction of his testimony at the trial. He made it clear at the suppression hearing that it was not until he had returned from making his observations at the construction site and not until he had relayed those observations to the uniformed officers that the flashlight was shined into the automobile and the bulk, if not all, of the tools were removed from the automobile. He did indicate, somewhat vaguely, that he thought that he recalled one of the uniformed officers having one small drill already in his hand at the moment when he arrived back at the automobile after making his observations at the construction site. He could not say, however, whether that drill had been removed from the automobile, recovered from the appellant or one of the persons with the appellant, or picked up from the ground. The appellant and his companions had been observed earlier to be carrying some objects in their

hands as they walked from the construction site to the automobile.

In any event, the arguable contradiction had no great significance. The observation of the appellant and his two companions going into and coming from a closed construction site in a deserted area at a desolate and lonely hour, coupled with the non-trespassory observation of the radial saw, power screwdriver and other tools on the rear seat of the automobile, would have supplied probable cause for the warrantless search of the automobile regardless of whether Corporal Heflin had already made and communicated his observations at the construction site or not.

Before making his ruling, the trial judge reviewed the testimony from the suppression hearing, indicated that the appellant was seeking a readjudication of the very issue which had been adjudicated at that hearing and declined to conduct a *de novo* hearing. Full testimony on the question of the constitutionality of the search had already been spread out fully upon the record and it is clear therefrom that there was ample probable cause to conduct a warrantless search of the automobile, *Carroll v. United States*, 267 U. S. 132; under exigent circumstances, *Coolidge v. New Hampshire*, 29 L. Ed. 2d 564. We hold that the trial judge did not abuse his discretion in declining to relitigate the issue.

The argument made by the appellant vis-a-vis his second contention is not at all germane to that contention as he frames it. He claims that the trial court committed prejudicial error in admitting into evidence two photographs of the stolen tools. He does not claim that these photographs did not accurately represent the goods in question. His argument, rather, goes to the point that the return of the stolen goods to their rightful owners, which return necessitated the taking of photographs, deprived him of the right to have an expert of his own examine those goods in order to appraise their fair market value.

On January 29, 1971, the appellant filed a Motion for

Discovery and Inspection which requested the State, *inter alia:*

> "1. To produce or make available to the Defendant for inspection: any books, papers document or tangible objects obtained from or belonging to the Defendant or obtained from others relating to the Defendant by seizure or by process."

The State promptly answered that Motion on February 3, 1971, and that answer asserted, *inter alia:*

> "1. The Defendant or his attorney may inspect and copy or photograph any papers, documents, or tangible objects obtained from or belonging to the Defendant or obtained from others by seizure or by process, by contacting Det. Sgt. R. G. Kitterman, Jr., Wheaton-Glenmont Detective Section, Wheaton, Maryland."

At no time, either prior to trial or during the trial, did the appellant request a hearing on his discovery motion pursuant to Maryland Rule 1210 c, take exception to any portion of the State's answer, or request the court in any way to require further answers to be given by the State in answer to the Motion for Discovery and Inspection. The appellant did not preserve the point for appellate review. Maryland Rule 1085.

The appellant admitted that he made no effort to contact Det. Sgt. Kitterman to inspect the stolen articles because he knew that those articles had already been returned to their owners and that Sgt. Kitterman possessed only the photographs of them. The appellant gave no explanation as to why he did not attempt to contact those owners and to arrange with them for such inspection.

We hold that the appellant's right of discovery and inspection was not denied him and that, in no event, was the introduction of the photographs at the trial improper.

The appellant's final contention is that the evidence was legally insufficient to establish the value of the stolen goods to be $100 or more. The State's key witness with respect to the identity of and value of the stolen goods was Harvey R. Mosier, a glazing foreman for the Washington Plate Glass Company, which company was working on the construction site in question. Five separate tools were allegedly stolen and were the subject of the larceny count upon which the appellant was convicted. All five of the tools had been in the custody of and were used by Mr. Mosier. Two of them belonged to him personally. Three of them belonged to the Washington Plate Glass Company.

The first of the tools listed in the indictment was a four-foot Columbia level alleged to have been worth $15. The allegation was that this tool was the property of Mr. Mosier whereas the proof showed it to have been the property of the Washington Plate Glass Company. As a result, it was disregarded in totaling the value of the stolen goods.

Mr. Mosier testified that the two stolen tools which were his own property were (1) a Black and Decker hole gun, which he testified was worth $55, and (2) a Black and Decker drywall screwdriver, which he testified was worth $90. Mr. Mosier further testified that two other of the stolen tools, which were the property of the Washington Plate Glass Company, were (1) a Skill Rotary hammer drill, which he testified was worth $160, and (2) a Craftsman radial saw, which he testified was worth $350. Out of undue deference to the appellant's counsel, because of his alleged confusion as to whether he could ever have inspected the Craftsman radial saw, allegedly worth $350, the trial court instructed the jury to disregard all testimony with respect to the value of that saw. There remained for jury consideration on the question of value, therefore, three items: the hole gun, the drywall screwdriver and the hammer drill, allegedly worth in the aggregate $305.

Mr. Mosier testified that he had been working with tools of this type for approximately twelve years and that the handling and care of the tools was his primary responsibility. He testified further that he had earlier been a retail manager in charge of purchasing tools of the type involved in this theft and that he was, therefore, familiar with their value. He admitted that he could not offer an expert opinion as to the current fair market value of the tools but was testifying as to their replacement value. He indicated further, however, that fair market value would be difficult to arrive at because it was not customary in the trade for craftsmen to sell their used tools or for other craftsmen to purchase used tools.

He testified that all of the tools in question were in good operational condition. He testified that a Black and Decker hole gun should have a life expectancy of five years and that the one in this case, in good operational condition, was only six months old. He testified that a Black and Decker drywall screwdriver should have a life expectancy of ten years and that the one in this case, in good operational condition, was just over one year old. He testified that a Skill Rotary hammer drill should have a life expectancy of ten years and that the one in this case, in good operational condition, was only four years old. It is settled, of course, that the test for the value of stolen goods in this state is market value and not replacement value. *Cofflin v. State*, 230 Md. 139; *Jones v. State*, 6 Md. App. 344. It is, therefore, clear that Mr. Mosier did not establish directly that the stolen goods were of the value of $100 or more. Proof may be indirect as well as direct, however. We hold that the testimony establishing the replacement value of the three items remaining for the jury to consider to have been $305, establishing that all three items were in good working order and establishing that, respectively, only 10 per cent, 10 per cent and 40 per cent of their life expectancies had been exhausted, could well have supported a rational inference from which the jury could fairly be convinced that

the three items had not depreciated to the point where they did not still possess, in aggregate, a market value of $100 or more. *Williams v. State,* 5 Md. App. 450, 459; *Metz v. State,* 9 Md. App. 15, 23. The evidence was, therefore, sufficient in law to permit the trial judge properly to deny the appellant's motion for a judgment of acquittal and to submit the case to the jury.

*Judgment affirmed.*