492 A.2d 970

Lorenzo J. WALLACE

v.

STATE of Maryland.

No. 1334, Sept. Term, 1984.

Court of Special Appeals of Maryland.

May 23, 1985.

**400**

José Felipé Anderson, Asst. Public Defender, Baltimore (Alan H. Murrell, Public Defender, Baltimore, on the brief), for appellant.

Valerie W. Loftin, Asst. Atty. Gen., Baltimore (Stephen H. Sachs, Atty. Gen., Kurt L. Schmoke, State's Atty. and Perry Lericos, Asst. State's Atty. for Baltimore City, Baltimore, on the brief), for appellee.

Argued before MOYLAN, BISHOP and ROBERT M. BELL, JJ.

BISHOP, Judge.

In a court trial in the Circuit Court for Baltimore City appellant, Lorenzo Wallace was convicted of daytime housebreaking,[1] breaking and entering a dwelling house [2] and theft of goods valued in excess of $300.00.[3] He was sentenced to three years incarceration and five years probation upon release and ordered to pay $1,288.00 restitution to the victim within five years after his release from prison.

Appellant asserts that:

I.  The evidence was insufficient to convict him of daytime housebreaking or breaking and entering a dwelling house.

II.  The trial court erred in allowing the State to adduce irrelevant evidence.

III.  The court erred in admitting evidence as to the value of the property stolen.

IV.  The court erred in ordering appellant to make restitution without first inquiring into his ability to do so.

## FACTS

Irving Greenberg testified that he was the owner of a two story building known as 4703 Homer Avenue, in Baltimore City.  In March of 1982 he leased the three bedroom home to the Johnson family under an agreement which provided for a week to week tenancy.  When, on Friday, August 6, 1983, the weekly rent was several days overdue, Mr. Greenberg telephoned Mrs. Johnson who informed him that she and her family had moved out of the apartment

---

1.  Md.Ann.Code 1957, art. 27 § 30 b (1982 Repl.Vol.)

2.  Art. 27 § 31 A

3.  Art. 27 § 342

"during the week," but that she had secured the apartment before vacating.

Immediately, Mr. Greenberg went to 4703 Homer Avenue. He discovered that the front door was ajar and the rear "trap door" was "forced open." He described the premises as being in a "Helter Skelter" condition. The light fixtures and wall switches had been removed as well as a 54 inch cabinet sink and all its plumbing. He also discovered that the toilet seat, wash basin and medicine cabinet had been removed from the bathroom. Mr. Greenberg prepared a list of these and additional miscellaneous missing items, which was admitted into evidence. He testified that he had not given appellant permission to enter the premises.

The State also presented testimony that on two separate occasions during the first week of August, 1983, appellant was seen walking in the alleyway in between 4701 and 4703 Homer Avenue. On the first occasion, he was seen carrying a toilet seat top which he later placed in a green "Cougar" automobile. On the second, he was seen carrying three 18' metal pipes. According to the first witness, the Johnson family had moved out of 4703 Homer Avenue several days prior to the day he observed appellant.

Appellant testified that he was generally at home during the first week of August because his car, a lime green Cougar, was inoperable. This was corroborated in testimony from appellant's mother. Appellant further testified that up until early August he had been working full time for a real estate company, helping to renovate apartments in preparation for sale. According to appellant, the company provided brand new materials for each job.

One of appellant's co-workers was Calvin Johnson, who was also one of the former tenants of 4703 Homer Avenue. In addition to his job with the real estate company appellant occasionally helped Mr. Johnson complete the latter's independent home improvement jobs, usually by painting. Appellant stated that he also did home improvement jobs on

his own, without Johnson, but that he did not work independently while he was working for the real estate company.

## I.

### Sufficiency of the Evidence

■ In reviewing the sufficiency of the evidence, the test is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime charged beyond a reasonable doubt" *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Tichnell v. State,* 287 Md. 695, 717, 415 A.2d 830 (1980). Where, as here, the trial was before the court, we will review both the law and the facts, but the judgment of the lower court will not be set aside on the evidence unless clearly erroneous. Md.Rule 1086.

■ Appellant argues that the evidence failed to show that the structure he broke was a "dwelling house" within the meaning of Art. 27 §§ 30(b) and 31A. Since by the time of the breaking the Johnsons had permanently vacated their apartment and no new tenants had yet moved in, appellant contends that the lower court's finding that 4703 Homer Avenue was a dwelling house was incorrect as a matter of law. We agree.

■ Art. 27, § 30(a) "creates the offense of statutory burglary. Its material difference from the daytime housebreaking provision [§ 30(b)] lies in the designation of the time of day of the two offenses." *Kanaras v. State,* 54 Md.App. 568, 580, n. 4, 460 A.2d 61, *cert. denied,* 297 Md. 109 (1983). Moreover, breaking and entering a dwelling house, under § 31A, is a lesser included offense of burglary. *Johnson v. State,* 38 Md.App. 100, 108, 379 A.2d 436 (1977), *cert. denied,* 252 Md. 734 (1978). Therefore, "[d]ecisions interpreting 'dwelling house' under the burglary law are fully applicable in our analysis of what constitutes a dwelling house" under the daytime housebreaking and

breaking and entering statutes. *See Kanaras,* 54 Md.App. at 580, 460 A.2d 61.

In the course of interpreting the term "dwelling house," this Court observed that statutory burglary must be construed "in light of the common law ... [and that] we must examine the purpose at common law of imposing punishment for ... burglary." *Kanaras,* 54 Md.App. at 581, 460 A.2d 61.

[T]he law of burglary was developed for the purpose of protecting the habitation of an individual. *See Arnold v. State,* 7 Md.App. 1 [252 A.2d 878] ... (1969).

That every man's house is "his castle" is a concept that has been echoed down through the ages and the social interest in the security of the "castle" has its origin in antiquity; for just as an animal or a bird resents any instrusion into its place of abode, so no doubt did primitive man. The terms commonly used to indicate the place are "dwelling" or "dwelling house," but the "word 'dwelling' imports a human habitation," and as a matter of common law, burglary is strictly an offense against the habitation.

*Kanaras,* 54 Md.App. at 581–82, 460 A.2d 61. (quoting R. Perkins, *Criminal Law* (3d ed. 1982) at 255–56).

■ The test for determining if building is a "dwelling house" is whether "it is used regularly as a place to sleep." *Poff v. State,* 4 Md.App. 186, 189, 241 A.2d 898, *cert. denied,* 251 Md. 751 (1968); however,

[t]he mere fact that a house was built for the purpose of serving as a place of human habitation, and that it is entirely suitable therefor, will not be sufficient to qualify it as a dwelling so far as the law is concerned. It is not such before the first dweller has moved in nor after the last dweller has moved out with no intention of returning, except that if an owner who has left with the intention of returning has rented the place in the meantime it might well be held that it is re-established as his dwelling after the tenant has left permanently even before the owner

has actually moved back. But, after a man has established a house as his dwelling it retains this character so long as he intends it to be his place of habitation even though he and his entire household are away.

Perkins, *supra*, (2d ed. 1969) at 202–3 (footnotes omitted). *See also, Wharton's Criminal Law,* (Torcia, 14th Ed.1980) § 335, at p. 207 (If a person leaves his dwelling house intending never to return, it ceases to be a dwelling house and does not become a dwelling house again until another person begins to live in it and to use it regularly for sleeping); Clark & Marshall, *Law of Crimes,* (7th Ed.1967) § 13.02, p. 989. (If the occupant of a house locks it up and leaves it, without intending to return, it ceases to have the character of a dwelling house.)

It is undisputed that a short time before the breaking, Mr. Greenberg's tenants, the Johnson family, moved out of 4703 Homer Avenue without any intention of returning. Also, there was no evidence that Greenberg had ever lived, or intended to live, in the apartment. Under such circumstances, because the structure does not qualify as a "dwelling house" it is generally held that a conviction for burglary cannot stand, although the accused may be guilty of a related offense not involving the element of a "dwelling house." *See, e.g., People v. Valdez,* 203 Cal.App.2d 559, 21 Cal.Rptr. 764 (1962) (Tenant had moved one week prior to breaking and new tenant was not scheduled to move in until 4 days after breaking); *Santistevan v. People,* 177 Colo. 329, 494 P.2d 75 (1972) (Breaking occurred in between rentals); *Johnson v. State,* 190 So.2d 601 (Fla.Dist.Ct.App. 1966) (Vacant dwelling although put up for rent, was not being used or occupied as dwelling at time of breaking); *Haynes v. State,* 180 Miss. 291, 177 So. 360 (1937) (Residents of house moved out permanently on day before burglary); *State v. Ferebee,* 273 S.C. 403, 257 S.E.2d 154 (1979) (Tenant had vacated premises and owner never occupied or intended to occupy premises); *Moss v. State,* 574 S.W.2d 542 (Tex.Crim.App.1978) (Breaking occurred in between

rentals and apartment was empty but for fixtures, appliances and mattress with boxspring.)

We set out the rule in Maryland in *Marston v. State*, 9 Md.App. 360, 264 A.2d 127 (1970) in which appellant, John Marston, and his brother Donald were convicted of burglarizing Donald's former residence. The owner of the property had employed Donald to work on the house, had permitted him to use it as his dwelling during that period of time and gave him keys to the house. Subsequently the owner terminated the employment, told him to discontinue at the house, and obtained the return of her house keys. Two months later, the burglary occurred. The owner testified that, although the house was furnished, she had never lived there nor did she intend to live there in the future.

We reversed appellant's conviction, stating:

The building is not a dwelling as defined in *Poff v. State*, [4 Md.App. at 189, 241 A.2d 898] . . .

The record reveals no express intention by the owner to rent the building as a dwelling in the future. However, even if there were some intent by the owner to rent the building as a dwelling, this intent would not make it a dwelling on the night of the breaking since in *Poff*, *supra*, it was clarified that a building devoid of occupants between rentings is not a dwelling, but simply a place in which furniture is stored pending rental by a new tenant.

9 Md.App. at 363–64, 264 A.2d 127 (Emphasis added).

■ To be sure, burglarly does not require that the dwelling be occupied by its residents at the time of the breaking; however, the law distinguishes a temporarily unoccupied dwelling house from a building such as 4703 Homer Avenue which, although at times used as a dwelling, has at the time of the breaking been abandoned by its occupants. "The former is a proper subject of burglary; the latter is not." *Marston*, 9 Md.App. at 364, 264 A.2d 127. Accordingly, we reverse appellant's convictions for daytime housebreaking and breaking and entering a dwelling house and direct the entry of judgments of acquittal as

to those charges. See discussion of storehouse breaking statutes in *Hackley v. State*, 237 Md. 566, 568, 207 A.2d 475 (1965); *Fields v. State*, 50 Md.App. 717, 720, 439 A.2d 1121 (1982); *Poff v. State*, 4 Md.App. at 188–89, 241 A.2d 898.[4]

We will address appellant's remaining contentions as they pertain to his theft conviction.

## II.

### *Evidentiary Errors*

The State sought to adduce evidence that neither appellant, nor his associate Calvin Johnson, possessed a home improvement license. Appellant claims the evidence was irrelevant and prejudicial.

In support of his argument appellant cites the following portion of the cross-examination of appellant's mother.

Q. Now, what type of business is your son involved in, do you know?

A. We have a store at the present time and prior to that he was doing a little home improvement work.

Q. Home improvement?

A. Yes.

Q. Do you know if he has a home improvement license?

[Defense Counsel]: Objection.

THE COURT: overruled.

[By Assistant State's Attorney]:

Q. Ma'am?

---

**4.** We find the holding in *Herbert v. State*, 31 Md.App. 48, 354 A.2d 449 (1976) upon which the State relies, to be inapplicable to the case *sub judice*. In *Herbert*, the Court held that a multiple unit motel complex was a "dwelling house," but that

"having proven one room of the motel to be a dwelling house, the State may not then designate another room a storehouse without further proof" that the use of the latter room varied from the use of the former. The Court specifically held that the State failed to prove beyond a reasonable doubt that "one room of a proven dwelling house was severable because it is used as a storage area[.]"

A. Pardon?

Q. Do you know whether or not he has a home improvement license?

A. No, he was a helper

■ The question to which appellant objected did not seek the substantive evidence he contends was irrelevant. His objection was clearly premature, since the State only asked if Mrs. Wallace *knew* if her son had a license. Curiously, after Mrs. Wallace answered the question in a manner which indicated that in fact appellant did not have a license, appellant neither objected nor moved to strike the allegedly improper evidence. Thus his objection is waived. Md.Rule 2–517(a).

Appellant next cites the following portion of his own cross-examination, which took place after he admitted that he and Calvin Johnson occasionally worked independently in the home improvement field.

Q. Do you have a home improvement license?

A. No, sir.

Q. Does Calvin Johnson have one?

A. No.

[Defense Counsel]: Objection, relevancy.

■ The court did not rule on the objection and appellant did not press for a ruling. In addition, appellant waited until the questions were asked and answered before he objected. He did not move to strike. Under these circumstances, we are doubtful that there is anything for us to review. Md.Rule 1085 and 2–517. *Fowler v. Benton,* 229 Md. 571, 575, 185 A.2d 344 (1962), *cert. denied,* 375 U.S. 845, 84 S.Ct. 98, 11 L.Ed.2d 72 (1963). In addition, since appellant allowed similar evidence to come in through his mother, without objection, he cannot contend that admission of the challenged evidence during his own testimony, even if erroneous, was so prejudicial as to require a new trial. *See S & S Bldg. Corp. v. Fidelity Storage Corp.,* 270 Md. 184, 190, 310 A.2d 778 (1973); *Piesner v. State,* 236 Md. 137, 145, 202 A.2d 585 (1964).

## III.

### Evidence of Value

Penultimately, appellant contends that the court improperly admitted testimony from Mr. Greenberg regarding the respective purchase prices, including installation costs, of the items stolen from the vacant apartment.[5] Since this was the only evidence produced as to value, he contends that the error requires reversal of his felony theft conviction, art. 27, § 342(f)(1), because evidence of an owner's cost is inadmissible to prove the value of stolen goods. According to appellant, the only permissible measure is fair market value. Appellant did not raise this ground in his objection below, having asserted only that Mr. Greenberg's testimony was inadmissible because "we don't know what a reasonable value would be." Md.Rule 1085, *VonLusch v. State,* 279 Md. 255, 368 A.2d 468 (1977).

In any event, we see no error in permitting the testimony. It is, of course, well settled that the test for the value of stolen goods is market value, *Mercer v. State,* 237 Md. 479, 485, 206 A.2d 797 (1965); *Cofflin v. State,* 230 Md. 139, 144, 186 A.2d 216 (1963); Art. 27, § 340(*l*)(1) but proof of market value "may be indirect as well as direct." *Vucci v. State,* 13 Md.App. 694, 701, 284 A.2d 646 (1971). Mr. Greenberg's recollection of his cost was certainly circumstantially relevant to present market value. The factor of depreciation goes to the weight of the evidence not its admissibility. Furthermore, an owner of goods is presump-

---

**5.** Although appellant contends that Greenberg testified to replacement cost, the record shows that he was in fact testifying to what he paid for the missing items.

> THE COURT: Well, do you know how much you paid for [the items], how much it would cost to replace it?
>
> THE WITNESS: I have been in the real estate management business from 25 to 30 years and I put a very conservative estimate on each item.
>
> THE COURT: *Based on what it cost you to put them in there?*
>
> THE WITNESS: Yes.

tively qualified to testify to the value of his goods, *Mercer, Cofflin.*

■ Finally, the court's finding that the value of the stolen items was in excess of $300.00 should not be overturned merely because there was no direct evidence of market value, since the court could draw a fair inference, from evidence of the original purchase prices, that the items were worth more than $300.00 *Marini v. State,* 30 Md.App. 19, 30, 351 A.2d 463 (1976). Compare *Mercer v. State,* 237 Md. at 484–5, 206 A.2d 797. Mr. Greenberg testified that his estimate of $1,288.00 was a conservative one, based on his twenty-five years in the real estate business.

## IV.

### *Sentencing*

The trial judge merged appellant's breaking and entering and theft convictions into his daytime housebreaking conviction. Since we affirm only the theft conviction we must vacate the sentence and remand for new sentencing under the theft conviction only.

■ With regard to appellant's claim that the court cannot order a defendant to make restitution without inquiring into his ability to do so, we need only note that under the penalty portion of the theft statute the court must sentence the offender to "restore the property taken ... or pay [the owner] the value of the property...." Art. 27, § 342(f)(1). The statute does not require a preliminary financial inquiry. The general issue is currently pending before the Court of Appeals. *Brecker v. State,* No. 70, Sept. Term 1984. In any event, there is no way to determine a defendant's ability to make restitution when, as here, it will not be initiated until the end of a lengthy prison sentence.

JUDGMENT OF CONVICTION OF DAYTIME HOUSEBREAKING, ART. 27, § 30(b) AND BREAKING AND ENTERING A DWELLING HOUSE, ART. 27, § 31A RE-

VERSED; CONVICTION OF THEFT OF GOODS IN EXCESS OF $300.00, ART. 27, § 342 AFFIRMED; SENTENCE VACATED AND CASE REMANDED FOR SENTENCING IN ACCORDANCE WITH THIS OPINION.

COSTS TO BE PAID ⅔ BY APPELLANT AND ⅓ BY THE MAYOR AND CITY COUNCIL OF BALTIMORE.