713 A.2d 40

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v.
CLAUDE CRUTCHER, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted May 19, 1998—Decided June 16, 1998.

Before Judges DREIER, KEEFE and PAUL G. LEVY.

*Ivelisse Torres*, Public Defender, attorney for appellant (*Alan I. Smith*, Designated Counsel, of counsel and on the brief).

*Fred J. Theemling, Jr.*, Hudson County Prosecutor, attorney for respondent (*Kathleen Butler–Smith*, Assistant Prosecutor, on the brief).

The opinion of the court was delivered by

DREIER, P.J.A.D.

Defendant appeals from a conviction of criminal trespass, *N.J.S.A.* 2C:18–3, a lesser-included offense of the original charge of burglary. He was sentenced to a term of eighteen months.

A Jersey City police officer testified that on the night of October 26–27, 1995, he was on patrol in a marked radio car with a

trained dog from the K–9 unit, when he received a radio call to respond to 258 Duncan Avenue in Jersey City. Upon approaching the house with the dog, the officer observed that the front door had been pried open and that a scissor gate behind the door was pulled apart. The officer, in uniform, entered the house, surveyed the immediate surroundings by flashlight, and twice gave his standard warning in a loud voice: "This is the police. You are under arrest. I have a trained police dog. If you do not come out, I will release him." There was no reply, and the officer released the dog, commanding him to "search and find."

Shortly thereafter, the officer heard scuffling in one of the rooms and a man yell "get the dog off me." The officer entered the room and saw the dog holding defendant's right leg with his teeth. When defendant was handcuffed, the officer called the dog off and then radioed for back-up assistance. The officer found several hand tools including three screwdrivers (two Phillips head and one standard head), a pair of pliers, a wrench and a hammer in and around a blue satchel located near defendant. Defendant denied that he owned the tools found by the police, although he acknowledged that the tools were in the room where he was found. Defendant was arrested and taken to the Jersey City Medical Center where he was treated for puncture wounds to his right ankle.

The building's owner testified that the building is a two-floor single family dwelling with a basement, situated on property measuring twenty feet by eighty feet. At the time of the alleged burglary, the building had been unoccupied for nearly a year. The house's water, gas and electricity had been disconnected prior to defendant's arrest. He further testified that when he went to the house after the police called him, he discovered that nearly all the copper pipes from the house were missing, in addition to other damage to the house.

Defendant, age forty-nine, testified that he was homeless at the time of the alleged burglary and that he had been seeking shelter inside the house. He did, however, give the police an address,

which was the home of his sister. Although the owner had not given defendant permission to enter the house, defendant had, at times, been using the house as shelter for over a month. He testified that the first time he entered the house, he entered through the front door that was closed but not locked, and that although there was a scissor gate on the inside, there were no padlocks on it. He stated that prior to his arrest on October 27, 1995, he had slept six or seven nights in the house, and that, during such time, he had not taken anything from the house, nor did he do anything to damage the house physically.

Defendant claimed that on the night of October 26th he had entered the house at around 8:00 p.m. carrying only his food and a flashlight. After falling asleep, he was awakened by the dog who came in and started biting his leg. Defendant testified that he kicked at the dog and then the police officer hit him across the face with a flashlight, knocking out defendant's front teeth. He denied going to the house with the intent to steal.

Defendant raises four points on this appeal:

*POINT I*

THE PROSECUTOR VIOLATED DEFENDANT'S SIXTH AMENDMENT RIGHT TO COMPULSORY PROCESS AND DEFENDANT'S DUE PROCESS RIGHT TO A FAIR TRIAL BY THREATENING DEFENSE WITNESS MICHAEL COBB WITH CRIMINAL PROSECUTION WHICH CAUSED THE WITNESS TO INVOKE A CLEARLY REMOTE, SPECULATIVE, AND UNREALISTIC FIFTH AMENDMENT CLAIM (Not raised below);

*POINT II*

THE PROSECUTOR'S SUMMATION DEPRIVED DEF[E]NDANT OF A FAIR TRIAL (Not raised below);

A. The prosecutor violated *State v. Bankston* by suggesting that defendant was observed awake and committing a burglary by an unidentified witness;

B. The prosecutor improperly commented on facts not in evidence;

*POINT III*

THE VERDICT BELOW WAS AGAINST THE WEIGHT OF THE EVIDENCE BECAUSE THE FACTS ADDUCED AT TRIAL FAILED TO ESTABLISH BEYOND A REASONABLE DOUBT THAT 258 DUNCAN AVENUE WAS A DWELLING;

*POINT IV*

IMPOSITION OF THE MAXIMUM EIGHTEEN (18) MONTH SENTENCE WAS AN ABUSE OF THE TRIAL COURT'S DISCRETION BECAUSE IT EXCEEDED THE PRESUMPTIVE SENTENCE FOR A CRIME OF THE FOURTH DEGREE.

Defendant's first two points are without merit, and will therefore be discussed only briefly. *R.* 2:11–3(e)(2). In light of our reversal on the third point, the fourth issue is rendered moot and will not be discussed further.

Defendant's first two points, raised for the first time on appeal and therefore subject to the plain error standard of review, *R.* 2:10–2, relate to errors allegedly committed by the prosecutor during the course of the trial. Defendant did not contest his guilt with respect to the criminal trespass conviction. In fact, during the course of the trial, defendant readily admitted that he committed criminal trespass, and his defense to the burglary charge was that he was guilty only of the trespass. Defendant's attorney stated during summation: "That leaves us with [defendant] being in a building where he had no business . . . being. That's a crime for which he is or should be found guilty. But that crime is not burglary. That crime is trespass. The only thing that [defendant] is guilty of, ladies and gentlemen, is trespassing."

Both of defendant's first two points relate solely to the charge of burglary of which defendant was acquitted by the jury. Because defendant was acquitted of burglary, there was not even an arguable "unjust result." Both errors are thus harmless and cannot rise to the level of plain error.

Defendant next claims that 258 Duncan Avenue was not a "dwelling," within the meaning of *N.J.S.A.* 2C:18–3a.[1] The statute defining criminal trespass reads:

---

[1] The State argues that defendant's arguments should not be considered because of defendant's failure to make a motion to the trial court for a new trial, under *R.* 3:20–1 and *R.* 2:10–1. The State is incorrect. Although defendant's appendix does not contain a record of a formal written motion for a new trial, at sentencing the judge stated:

A person commits an offense if, knowing that he is not licensed or privileged to do so, he enters or surreptitiously remains in any research facility, structure, or separately secured or occupied portion thereof.... [An] offense [under this section] is a crime of the fourth degree if it is committed in a *dwelling....* Otherwise it is a disorderly persons offense.

[*N.J.S.A.* 2C:18–3a (emphasis added).]

The statute does not define the term "dwelling." Therefore, in arriving at a definition of the term, we must look elsewhere. *See* John M. Cannel, *New Jersey Criminal Code Annotated,* comment 3 to *N.J.S.A.* 2C:18–3, at 428 (Gann 1997–98) ("The term ['dwelling'] in this context[2] has not been defined by the Code, but has been defined by the common law in the context of adjudicating burglary cases. A dwelling, thus, is a private house, a place where a person resides and sleeps.") (citing *State v. Wilson,* 1 *N.J.L.* 502 (Sup.Ct.1793); *Connors v. State,* 45 *N.J.L.* 340, 342 (Sup.Ct.1883)).

We have found no New Jersey case discussing the question whether a vacant building with no tenants or residents constitutes a dwelling for the purposes of burglary or criminal trespass statutes. There is, however, out-of-state authority. In *Tukes v. State,* 346 *So.*2d 1056 (Fla.Dist.Ct.App.1977), a defendant appealed a second-degree burglary conviction, arguing that there was insufficient support for the jury's finding that the structure at issue was a "dwelling." At the time of the burglary, "the house was unoccupied and up for sale although the owner had been in residence the preceding month." *Id.* at 1056. In downgrading

---

The defense has requested that a judgment of conviction be [ ] set aside based upon the fact that the evidence, in the defense's opinion, was insufficient to establish that the structure was a dwelling, and as a result of that, the conviction must be set aside.

[2] Although "dwelling" is defined in the criminal code section dealing with justification (*see N.J.S.A.* 2C:3–11(c)) (" 'Dwelling' means any building or structure, though movable or temporary, or a portion thereof, which is for the time being the actor's home or place of lodging except that, as used in [*N.J.S.A.*] 2C:3–7, the building or structure need not be the actor's own home or place of lodging"), by the express terms of the statute, the definitions only pertain to the justification chapter. *See N.J.S.A.* 2C:3–11.

the defendant's conviction to a third-degree felony, the Florida appeals court cited a 1920 case, *Smith v. State*, 80 *Fla.* 315, 85 *So.* 911 (1920), in which "the house which defendant was charged with breaking and entering had been unoccupied for nine months, and although some of the household effects of the owner and his family were left inside it, there [wa]s no evidence that the owner intended to return and again occupy it." *Tukes*, 346 *So.*2d at 1056. The *Smith* Court held that "in the absence of any proof that the occupant intended to return and reestablish his residence there, ... there was a failure in the evidence to prove the essential allegation that the structure was a dwelling house." *Id.* at 1057 (citing *Smith, supra,* 85 *So.* at 912).

The *Tukes* court provided the common law definition of "dwelling," upon which the *Smith* court relied:

" ' "The house must be occupied as a dwelling house, and not merely be suitable or intended for such purpose. The owner or occupant, or some member of his family, or a servant, must sleep there. If it is so occupied the temporary absence of the occupant will not prevent it from being the subject of burglary as a dwelling house; but a house, although furnished as a dwelling house, loses its character as such for the purpose of burglary, if the occupant leaves it without the intention to return. Occasionally sleeping in a house is not enough to make it a dwelling house." ' "

*Ibid.* (citing *Smith, supra,* 85 *So.* at 912) (quotation omitted); *see also Johnson v. State*, 190 *So.*2d 601, (Fla.Dist.Ct.App.1966) ("Although the premises involved was a residence, it was vacant and had been put up for rent, and was not being used or occupied as a dwelling at the time involved. Therefore, the breaking and entering of which the defendant was found guilty was not of [a] dwelling ... but of a building ... a lesser offense.").

Subsequent to *Tukes,* however, the Florida Legislature, in 1982 provided a statutory definition of "dwelling" that dispensed with the notion of occupancy, and instead encompassed "a building or conveyance of any kind, either temporary or permanent, mobile or immobile, which has a roof over it and is designed to be occupied by people lodging therein at night, together with the curtilage thereof." *See Perkins v. State*, 682 *So.*2d 1083, 1084 (Fla.1996) (citing Fla. Stat. § 810.011(2)). Florida courts have used the statute's broad definition to uphold second-degree convictions in

situations that would not otherwise have met the common law standards for dwellings. *See, e.g., id.* at 1084–85 (upholding a dwelling burglary conviction where the house was put on the rental market, vacated by the owners several months prior to the burglary, and had no telephone or water service, although there was still electricity and well water). However, such a broad reading of the term "dwelling" is attributable only to the Florida statute's broad definition.

Other jurisdictions have likewise declined by case law to attribute the status of a "dwelling" to houses that are unoccupied, without tenants or owners residing in the house. For example, where a house had been rented to a family for over a year on a week-to-week basis, until the family vacated the house a short time before the break-in, a Maryland court overturned a conviction for breaking and entering a dwelling house. It found the circumstances of the case were insufficient to warrant a determination that the house at issue was a dwelling. *See Wallace v. State,* 63 *Md.App.* 399, 492 *A.*2d 970, 974 (1985), *cert. denied,* 304 *Md.* 301, 498 *A.*2d 1186 (1985). In reaching its conclusion, the court cited Maryland authority and criminal law treatises:

> The test for determining if [a] building is a "dwelling house" is whether "it is used regularly as a place to sleep[,]" ... [However,] "the mere fact that a house was built for the purpose of serving as a place of human habitation, and that it is entirely suitable therefor, will not be sufficient to qualify it as a dwelling so far as the law is concerned. It is not such before the first dweller has moved in nor after the last dweller has moved out with no intention of returning...."
>
> [*Ibid.* (citations omitted)].

*Wallace* supports a general proposition that even when a house is between rentals, it is not considered a "dwelling," but is rather "simply a place in which furniture is stored pending rental by a new tenant." *Id.* at 975 (citing *Marston v. State,* 9 *Md.App.* 360, 264 *A.*2d 127 (1970)).

Similarly, *Rash v. Commonwealth,* 9 *Va.App.* 22, 383 *S.E.*2d 749 (1989), addressed the question of "whether an unoccupied but furnished dwelling constitutes a 'dwelling house' for purposes of [the state burglary statute] when its last occupant has left with no intent to return and its owners plan to sell it." *Id.* at 750. The

house at issue had been uninhabited for approximately eight months and the owners were planning to auction the fully-furnished property. The *Rash* court, focusing on the protections to people's habitations that the burglary statutes originally sought to secure, concluded that the term " 'dwelling house' [for the purposes of the state burglary statute] means a place which human beings regularly use for sleeping" and that "a dwelling is no longer a 'dwelling house'... when its occupants leave it without any intention to return." *Id.* at 751–52. *See also State v. Scarberry,* 187 *W.Va.* 251, 418 *S.E.*2d 361, 364 (1992) (joining other jurisdictions in the conclusion that "a dwelling is no longer a dwelling house for purposes of a burglary statute when its occupants leave it without any intention of returning"); III *Wharton's Criminal Law,* § 335 (14th ed. 1980) ("If a person leaves his dwelling house, intending never to return, it ceases to be a dwelling house. It does not become a dwelling house again until a new person begins to live in it; he begins to live in it when he starts to use it regularly for the purpose of sleeping.").

■ ˙ As noted earlier, the owner of 258 Duncan Avenue testified that at the time of defendant's arrest, the building had been unoccupied for nearly a year. Not only was the building vacant at the time of defendant's arrest, the house was essentially uninhabitable. There was no electricity or other utilities, including running water. The house in this case should not have been considered a dwelling for the fourth-degree criminal trespass charge. The structure lost its character as a dwelling when it sat vacant for a substantial period.

Because the jury was not properly charged concerning the definition of a "dwelling," and because defendant was correct in his assertion that the record provided insufficient support for the jury's finding that the house was a dwelling, his conviction could not have been for a fourth-degree crime. The conviction should have been for the disorderly persons offense of criminal trespass.

We therefore vacate defendant's fourth-degree conviction and the sentence imposed therefor. The matter is remanded for defendant to be resentenced for a disorderly persons conviction.