# RICHARD EDWARD HERBERT *v.* STATE OF MARYLAND

[No. 745, September Term, 1975.]

*Decided March 31, 1976.*

The cause was argued before Orth, C. J., and Powers and Lowe, JJ.

*Robert Gordon King, Assigned Public Defender,* for appellant.

*Bernard A. Raum, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Sandra A. O'Connor, State's Attorney for Baltimore County,* and *Thomas J. O'Connell, Assistant State's Attorney for Baltimore County,* on the brief, for appellee.

Lowe, J., delivered the opinion of the Court.

## House or Home

In *Waugh v. State,* 20 Md. App. 682, rev'd 275 Md. 22, we faced the question of whether a suitcase was more like a car or a house. We are faced here with the issue of whether a motel room is a dwelling capable of being burglarized or a storehouse which can be merely broken, or — as the State would have us rule, both.

On May 23, 1975, after a trial before the Circuit Court for Baltimore County, sitting without a jury, Richard Edward Herbert was found guilty of burglary under the common law

and Md. Code, Art. 27, §§ 29, 30, 31 and of "Attempted Storehouse etc. Breaking" under Art. 27, § 342. These convictions rested largely upon the testimony of four Baltimore County policemen who were assigned to a "stakeout" at the Continental Motel due to "a recent rash of burglaries" that had plagued that establishment. Officer Barker, who presumably had the best vantage point at the stakeout, testified that during the early morning hours of September 15, 1974, he saw a black male park a 1974 Oldsmobile automobile in the motel parking lot, walk up to room 76 of the motel complex and unsuccessfully attempt to open the door. The suspect then walked down a row of motel rooms, turning the knobs on each door, until he reached room 66 which was unlocked, whereupon he entered the room for three or four minutes. After leaving room 66 the suspect continued walking along the row of motel rooms, turning doorknobs, until a car pulled into the parking lot and the driver entered room 66.

The suspect then continued trying the motel room doors, as he walked toward room 76 where he stopped and again attempted to open the door, this time with what appeared to be a key. After a third unsuccessful attempt to unlock room 76, the suspect entered his car, but was arrested before leaving the motel complex. He was subsequently identified as Richard Edward Herbert. A search of his person at the time of his arrest revealed three room keys from a Baltimore City motel, the key to room 76 of the Continental Motel, and a yellow flashlight. A further search of the car resulted in the finding of a bag containing twelve more motel keys.

The most troublesome issue among the seven that the appellant has raised is the contradiction of the elements of the two offenses of which he was convicted, burglary of room 66 and attempted storehouse breaking of room 76. It appears from the convictions below and from the Maryland case law on the issue, that prosecutors as well as judges may be confused as to the distinction between a "dwelling" which is an element of the crime of burglary, and "any shop, storehouse, tobacco house, warehouse, or other building", an element of attempted storehouse breaking.

But for the fact that room 66 was rented that evening, the State produced no evidence at Herbert's trial that room 76 was used for different purposes than room 66.[1] Both seem to be ordinary motel rooms designed and used for the same purpose. It is apparent that either both rooms are "dwellings" or both are "other buildings" under the storehouse breaking statutes, Md. Code, Art. 27, §§ 32, 33, 342. We have faced this dilemma before although never have we had simultaneous convictions of both crimes regarding similar rooms in the same motel. As we stated in *Marston v. State,* 9 Md. App. 360, 363,

> "The clearest test of what is a dwelling house is in *Poff v. State,* 4 Md. App. 186, 189 . . . :
>
>> 'The test as to whether or not a building is a 'dwelling house' is whether or not it is used *regularly* as a place to sleep. No building becomes a 'dwelling' by reason of the fact that someone may sleep there on rare occasions or take an occasional nap there, as in the current appeal.' " Perkins, *Criminal Law,* Ch. 3, § 1 C (1), at 158, 2 Wharton, *Criminal Law and Procedure,* § 433 at 45, 13 Am. Jur. 2d *Burglary* § 3 at 321, Clark and Marshall, *Law of Crimes,* § 13.01 at 874.

Perkins, in his volume on *Criminal Law,* 2d ed., Ch. 3, § 1, p. 207, states:

> "If a house is *habitually used as a place where persons sleep,* it is properly to be regarded as a dwelling even if no one who lodges there has a

---

1. Although the State further proved through the testimony of the motel owner and the occupant of room 66 that room 66 was occupied on the night of the incident involved here, that proof was relevant only as to whether the room was generally used as a place to sleep. The proof that a named individual occupied the room on the evening in question is not evidence, by itself, sufficient to make a motel room a "dwelling house," for "[n]o building becomes a 'dwelling' by reason of the fact that someone may sleep there on rare occasions or take an occasional nap there. . . ." Poff, *infra,* at 189. It is the overall testimony and general knowledge of the purposes served by a motel that made it a dwelling house under the burglary law.

sufficient interest therein to establish it as *his* dwelling. Thus a hotel is a dwelling house even if all the inmates are transients, and the proprietor and his family and servants all sleep elsewhere." (Emphasis added).

The State produced evidence from which it could be inferred that the motel complex was utilized for overnight sleeping accommodations by paying guests and thus met its burden of proving the "dwelling house" element of burglary beyond a reasonable doubt, as was required to convict appellant of burglary of room 66, (Count I).

Not every room of a multiple unit "dwelling house" need be classified as a dwelling. In *Arnold v. State*, 7 Md. App. 1, the basement of an apartment house which was divided into storage areas for the tenants was held to be a storehouse and not a dwelling; and, in *Poff, supra*, a vacant apartment used simply as a place in which to keep furniture pending rental was found to be a storehouse and not a dwelling. Also in *Jones v. State*, 2 Md. App. 356, part of a building used as a club was deemed a storehouse although another part, used as an apartment, was a dwelling.

But, having proven one room of the motel to be a dwelling house, the State may not then designate another room a storehouse without further proof. There was no evidence at trial that room 76 varied in use or purpose from any other room in the motel. The proof by the State that the motel rooms were overnight places of repose, upon which was based the conviction under Count I, may not be disregarded in order to convict appellant of a different charge under Count V. If the prosecution contends that one room of a proven dwelling house is severable because it is used as a storage area, *e.g.*, *Arnold* and *Jones, supra*, it must prove this "beyond a reasonable doubt." The State may not make soup of one and sauce of the other without adding an additional ingredient. We will reverse the conviction under the fifth count, attempted storehouse breaking and vacate the (suspended) sentence. *United States v. Gaddis*, 18 Cr. L. 3079 (decided 3/3/76).

## Sentencing Considerations

At sentencing, the trial judge chose to consider factors which the Court of Appeals in *Johnson v. State*, 274 Md. 536, has held to be improper sentencing considerations. In *Johnson, supra,* at 542-544, the Court said:

"Even though we firmly believe that the judge at sentencing can and should take into account a broad spectrum of considerations, there do exist, in order to protect the fundamental rights of the offender, restrictions on this latitude. Thus, in view of what is at stake for one who is charged with a crime, *it is improper to conclude that a decision, constitutionally protected, not to plead guilty and in doing so to require the State to prove the defendant's guilt beyond a reasonable doubt, is a factor which ought to, in any way, influence the sentencing judge to the detriment of the accused.* In the case now before us, when Judge Powers said, 'if you had come in here with a plea of guilty . . . you would probably have gotten a modest sentence,' he indicated that he, at least to some degree, punished Johnson more severely because he failed to plead guilty and, instead, stood trial. *Although a reading of the judge's remarks in full does not necessarily demonstrate that a more severe sentence was imposed, the words just quoted manifest that an impermissible consideration may well have been employed. Any doubt in this regard must be resolved in favor of the defendant.* Accordingly, our part in the administration of justice requires that we find that a consideration of Johnson's failure to plead guilty was impermissible because a price may not be exacted nor a penalty imposed for exercising the fundamental and constitutional right of requiring the State to prove, at trial, the guilt of the petitioner as charged. This is as unallowable a circumstance as would be the imposition of a more severe penalty because a defendant asserted his

right to counsel or insisted on a jury rather than a court trial.

. . .

The words of Judge Weinfeld in *United States v. Tateo, supra* [214 F. Supp. 560] at 567 are particularly instructive:

> 'No matter how heinous the offense charged, how overwhelming the proof of guilt may appear, or how hopeless the defense, a defendant's right to continue with his trial may not be violated. His constitutional right to require the Government to proceed to a conclusion of the trial and to establish guilt by independent evidence should not be exercised under the shadow of a penalty — that if he persists in the assertion of his right and is found guilty, he faces, in view of the Trial Court's announced intention, a maximum sentence, and if he pleads guilty, there is the prospect of a substantially reduced term. To impose upon a defendant such alternatives amounts to coercion as a matter of law.'

This same principle was succinctly stated by the Supreme Judicial Court of Massachusetts in *Letters v. Commonwealth, supra,* 193 N.E.2d [578] at 580, as follows:

> 'But, plainly, a defendant, whatever his character, may not be punished for exercising his right to trial and, therefore, the fact that he has done so *should be given no weight in determining his sentence.'* (emphasis added)."

(Emphasis partially added; footnote omitted).

At two junctures during the penalty phase of the proceedings, the trial judge clearly indicated that he had considered "the fact that the man has maintained his innocence throughout." He first pointed out to Herbert and his counsel what bothered him about appellant's attitude:

> "I do have one question which troubles me a great

deal. I think I have every right to consider, and also think I have a duty to let it be known that, Mr. Herbert, one of the factors in any case, and I understand your argument, and think there is logic in what you say, but I think a Judge has to consider and prosecution has to consider the fact that the man has maintained his innocence throughout. I have heard one of the Judges from the bench say that the first step toward rehabilitation is admitting there's been some criminal involvement. I don't think that a man has to come in and say I did it, and lay down and ask sympathy. That is not required. It's a delicate problem — a philosophical problem, but the evidence in the case as far as I was concerned was really overwhelming."

Apparently counsel's argument in response did not dispel that concern. At allocution, the court's colloquy with the appellant emphasized its continued preoccupation with the forbidden consideration:

"All right, Mr. Herbert, before a judgment is imposed or sentence in any case, a Defendant must have an opportunity to make a statement. I'll be glad to hear from you anything you wish to say before I impose sentence.

THE DEFENDANT: Your Honor, I don't have anything to say. I really feel I am in a position where I can rehabilitate myself some if I'm allowed to go out on the street, and also in a position if I admit that I am guilty it may affect any appeal I might have.

THE COURT: I'm not asking you to do that. I realize it is a dilemma. I want you to understand it is a dilemma that every Defendant faces. There is no question about it. I am not asking you to do that, *but it is also a factor in this scale we use.* We use a big scale, and we put lots of things into it, and one of the things I have a difficult problem with, and you have a problem too — all Defendants also —

THE DEFENDANT: But, Your Honor, I should say I am in a position where I think I can rehabilitate myself.

THE COURT: Mr. Herbert, this is a very difficult case — very unfortunate case. I might say to you that what I am about to do is not an effort to convince you that I am right. I do not have that responsibility. If a Judge had to convince every Defendant that the verdict was right, no Judge would ever render any verdict, because he'd never be able to do that, but I think it is the right one. I am just giving my reasons; I think you are entitled to know why you are being sentenced, and what for." (Emphasis added).

The mandate of *Johnson* is clear. The protestations of innocence throughout the trial must not influence sentencing "in any way."

Although the Court of Appeals reversed this Court on this issue in *Johnson,* it did not find it necessary to reverse the conviction and remand the case for retrial as prayed by appellant here. The Court of Appeals instructed us "to vacate only the sentence which was imposed . . . and then remand the case . . . with direction that it impose a new sentence arrived at in conformity with this opinion." We shall do the same.

### Further Grounds Without Merit

We have carefully reviewed the record and find appellant's remaining questions to be without merit:

### I

The complaint that the record does not disclose a knowing and intelligent waiver of a jury trial is answered precisely in *Miller v. Warden,* 16 Md. App. 614, 628; see also *Williamson v. State,* 25 Md. App. 338.

### II

Appellant contends that the proof of burglary was

insufficient to convict because of a lack of proof of felonious intent. The intent here was proven by the circumstances (surreptitiously trying to open doors at night and possession of a number of motel keys). It is not necessary that goods actually be taken to prove the intent to steal. *Barnette and Crawford v. State,* 5 Md. App. 5; *Sparkman v. State,* 3 Md. App. 527.

## III

There is no duty to advise a criminal defendant of his right to move for a new trial. *Dorris v. Warden,* 222 Md. 586; *United States v. Follette,* 358 F. 2d 922.

## IV

We have consistently held that the issue of effective assistance of counsel may not be reviewed for the first time on appeal. Md. Rule 1085. *White v. State,* 17 Md. App. 58; *Bailey v. State,* 6 Md. App. 496, 510.

## V

Appellant complains that the State's Attorney made certain prejudicial remarks at sentencing. No objection was made and the issue was not preserved for review. Md. Rule 1085.

> *Count five of Indictment No. 49790, judgment reversed.*
>
> *Count one of Indictment No. 49790, judgment affirmed, but sentence vacated.*
>
> *Case remanded for imposition of new sentence in conformity with this opinion.*