609 A.2d 313

William Craig BANE

v.

STATE of Maryland.

No. 58, Sept. Term, 1991.

Court of Appeals of Maryland.

July 22, 1992.

Melissa M. Moore, Asst. Public Defender (Stephen E. Harris, Public Defender, on brief), Baltimore, for petitioner.

Mary Ellen Barbera, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on brief), Baltimore, for respondent.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, McAULIFFE, CHASANOW, KARWACKI and ROBERT M. BELL, JJ.

ROBERT M. BELL, Judge.

The issue presented in this case is whether separate convictions of storehouse breaking and stealing[1] may be

---

1. Md.Code (1957, 1992 Repl.Vol.) Article 27, § 33, provides:
   Every person convicted of the crime of breaking into any shop, storeroom, filling station, garage, trailer, boat, cabin, diner, tobacco house or warehouse, although the same be not contiguous to or used with any mansion house, and stealing from thence any money, goods or chattels to the value of five dollars or upwards, or as being accessory thereto, shall restore the thing taken to the owner thereof, or shall pay him the full value thereof, and shall be guilty of a

sustained when but one breaking occurred, involving, however, two separate businesses, operated from offices located in the same building and separated from each other only by a hallway and unlocked and open doors. By affirming the judgments of the Circuit Court for Prince George's County, which imposed separate, consecutive sentences, the Court of Special Appeals answered in the affirmative. We granted the petitioner's petition for certiorari and now reverse.

## I.

A jury convicted William Craig Bane, the petitioner, of two counts of storehouse breaking and stealing $5.00 or more, two counts of theft over $300.00, and one count of storehouse breaking with intent to steal more than $300.00. The premises into which the petitioner was found to have broken was a dwelling house which had been converted to commercial use. The owner used a part of the premises as a Nationwide Insurance office and rented the remainder for use as an office for the operation of a roofing business. The two offices were separated by a hallway which gave each office free access to the other. There were no signs on the office doors, nor any indication that there were separate offices. Nor was there, so far as the record reveals, any indication of separateness on the outside of the building.

The evidence produced at trial revealed that the point of entry to the entire premises was through a back window in the insurance agency office. Because that office and the roofing company office are separated by only a hallway, and not by locked doors, each having free access to the other, once entry was made, the petitioner had access to the roofing company office as well. Property was taken from both offices. Accordingly, as we have seen, the petitioner was charged with, and convicted of, among other offenses, breaking and stealing from both offices.

---

felony and upon conviction be sentenced to the penitentiary for not more than ten years.

The remaining counts of which he was convicted, having been merged into the breaking and stealing counts, the trial court sentenced the petitioner to consecutive ten-year terms of imprisonment. Fifteen years of the sentence were suspended in lieu of five years probation upon the petitioner's release from imprisonment.

On appeal to the Court of Special Appeals, the petitioner argued that the storehouse breaking and stealing counts should have resulted in but one conviction. In particular, he urged that the evidence clearly showed that there was only one storehouse into which he could have broken; that there were two businesses located in the same building did not render the space occupied by each a separate storehouse. Rejecting that argument, the intermediate appellate court held:

> The evidence shows that there were separate offices within the building, which were separated by a hallway. Property was stolen from both offices and both owners. Because "stealing" is an essential element of the crime, *see Turner v. State*, 242 Md. 408 [, 219 A.2d 39] (1966), the separate stealings support separate convictions and sentences.

## II.

We are here concerned with the propriety of multiple sentences for conduct proscribed by a single statute, which, though occurring in a single transaction, gives rise to multiple prosecutions. This raises a question of the proper unit of prosecution; the intent with which the Legislature acted when enacting the statute must be divined. *See Dickerson v. State*, 324 Md. 163, 170–71, 596 A.2d 648, 651–52, (1991); *Randall Book Corp. v. State*, 316 Md. 315, 323–24, 558 A.2d 715, 719–20, (1989). Our quest, in that regard, begins with "the words of the statute, read in light of the full context in which they appear, and in light of external manifestations of intent or general purpose available through other evidence." *Cunningham v. State*, 318 Md. 182, 185, 567 A.2d 126, 127 (1989). *See State v. Bricker*,

321 Md. 86, 92, 581 A.2d 9, 12 (1990); *Davis v. State*, 319, Md. 56, 60, 570 A.2d 855, 857; *Kaczorowski v. City of Baltimore*, 309 Md. 505, 513, 525 A.2d 628, 632 (1987). "When the language is clearly consistent with the apparent purpose of the statute and the result is not absurd, no further research is required." *Dickerson*, 324 Md. at 171–72, 596 A.2d at 652, citing *Kaczorowski*, 309 Md. at 515, 525 A.2d at 633. Moreover, the analysis of the statute's language must be undertaken "from a commonsensical rather than a technical, perspective, ... always seeking to avoid giving the statute a strained interpretation or one that reaches an absurd result." (citations omitted) *Id.*

The language of the statute, particularly, as pointed out by the State, the Legislature's use of the article, "any," *see Cunningham v. State*, 318 Md. at 188, 567 A.2d at 129 and *Brown v. State*, 311 Md. 426, 435–36, 535 A.2d 485, 489 (1988), makes clear that the unit of prosecution contemplated by the Legislature is the individual storehouse broken. This common sense approach leads to a result that is reasonable, and not absurd. The petitioner does not disagree that the proper unit of prosecution is the individual storehouse.

## III.

The State argues that the petitioner was properly convicted of two violations of storehouse breaking and stealing. It reasons, relying on cases from the Court of Special Appeals,[2] that a single building may contain multiple uses, including more than one storehouse, and, thus, it is a question of the sufficiency of the evidence whether separate convictions and sentences are permitted. That the petitioner broke into two storehouses, rather than one as the petitioner claims, is shown, the State maintains, by the trial testimony that two businesses occupied separate offices in

---

2. *Herbert v. State*, 31 Md.App. 48, 354 A.2d 449 (1976); *Rizia v. State*, 16 Md.App. 326, 295 A.2d 818 (1972); *Arnold v. State*, 7 Md.App. 1, 252 A.2d 878 (1969); *Jones v. State*, 2 Md.App. 356, 234 A.2d 625 (1967).

the premises broken. The fact that the offices were not separated by locked doors, but only by a hallway did not, it asserts, prevent the offices from being separate storehouses. It is of significance to the State, moreover, that "both Mr. Vincent's office and Mr. Durringer's private office are separated from the rest of the first floor by walls and a door." The State argues that, because it provided access to both storehouses, only a single breaking was necessary to constitute a breaking of both:

> Given that this single breaking at once violated the security of both offices *and* provided Bane with access to both offices—each a unit of prosecution—no additional breaking into either needed to have been shown to support separate convictions. (emphasis in original)

Alternatively, the State relies upon the opening of a closed cabinet in the inner office of the insurance agency in order to obtain a can of soup as being a sufficient second breaking to sustain the petitioner's convictions for two storehouse breakings.[3]

The petitioner acknowledges that separate storehouses may exist in a single building. He argues, however, that to constitute separate storehouses cognizable units of prosecution, each must be separately and independently identifiable as such:

> ... the separate structures must be closed off and designated separate in some way. A mere separation by walls and a door is not sufficient without something to indicate to the outside world that it is a separate structure. Such separation could be made explicitly with a sign on a separate door indicating a separate business exists within the structure, or implicitly with some other designation of separateness such as locking and sealing the separate storehouse off from the rest of the storehouse. Thus, for example, in a shopping mall, there may be many separate storehouses co-existing under one roof, each with walls

---

3. This argument is made necessary by the fact that the record does not reflect that the door to the roofing office was closed, let alone locked.

and a door separating them from the other storehouses and each with a separate designation on the front of the storehouse indicating the separate company that sells its product within. The fact that the separate storehouses and the mall share the same roof obviously does not change their character as separate storehouses.

Because, in this case, the offices serving the roofing business could not be identified separately and independently from those servicing the insurance agency, the building did not contain, the petitioner maintains, two separate storehouses, only one.[4]

## IV.

The State has the burden of proving, beyond a reasonable doubt, all of the elements of the alleged crime.

---

4. In its brief filed in the Court of Special Appeals, the State conceded that "there was a break-in of a single storehouse." Consequently, the petitioner, in his initial brief, used considerable space discussing the "single larceny" rule. That rule provides that "the theft of several articles at the same time constitutes but one offense although such articles belong to several owners." *People v. Bauer,* 1 Cal.3d 368, 82 Cal.Rptr. 357, 363, 461 P.2d 637, 643 (1969). Although this Court has never directly adopted the single larceny rule, in *State v. Warren,* 77 Md. 121, 122–124, 26 A. 500 (1893), we recognized that, "upon principle ... it would seem clear that the stealing of several articles at the same time, whether belonging to the same person, or to several persons, constituted but one offense." The Court of Special Appeals, on the other hand, relying on *Warren,* expressly adopted the single larceny rule in *Gavostis v. State,* 74 Md.App. 457, 471, 538 A.2d 338, 344 (1988).

The single larceny rule has been adopted by the majority of courts that have been presented with the issue. *See, e.g., Bauer, supra; Bair v. Commonwealth,* 652 S.W.2d 864 (Ky.1983); *State v. Myers,* 407 A.2d 307 (Me.1979); *Commonwealth v. Donovan,* 478 N.E.2d. 727 (Ma.1985); *State v. Lawhorn,* 574 S.W.2d 455 (Mo.1978); *People v. Caron,* 121 N.Y.S.2d 404 (Mont.Cty.Ct.1953); *State v. Jager,* 85 N.W.2d 240 (N.D.1957). Since the issue in this case is the proper unit of prosecution, a point on which the State and the petitioner certainly agree, we need not address the single larceny rule. If there was only one breaking, necessarily, there could be but one conviction, whatever the amount of property taken and no matter where it was taken. Conversely, if more than one breaking occurred, then both convictions could be sustained, so long as property was taken in both breakings.

*State v. Evans* 278 Md. 197, 206–207, 362 A.2d 629, 635 (1976). *See Franklin v. State,* 319 Md. 116, 122, 571 A.2d 1208, 1211 (1990). An essential element of a violation of § 33 is the breaking into a storehouse.[5] The term "storehouse" has been given a rather expansive definition. In *Hagans v. State,* 316 Md. 429, 435, 559 A.2d 792, 794–95 (1989), we held that a school was a storehouse. We reached the same result with respect to a department store. *Brooks v. State,* 277 Md. 155, 163, 353 A.2d 217, 222 (1976). In *Hackley v. State,* 237 Md. 566, 567, 207 A.2d 475, 476 (1965), we held that a motion picture theater fell within the definition of storehouse. The Court of Special Appeals has expressly stated that "§§ 32, 33, and 342 [the Maryland statutes prohibiting storehouse breakings] cover all *buildings other than dwelling houses."* (emphasis added). *Sizemore v. State,* 10 Md.App. 682, 686, 272 A.2d 824, 826 *cert. denied,* 261 Md. 728 (1971). *See also Buckley v. State,* 2 Md.App. 508, 511, 235 A.2d 754, 756 (1967), in which, relying on this Court's analysis in *Hackley, supra,* concluded that all buildings other than a dwelling house are within the meaning of the structures enumerated in Article 27, § 32.[6]

In *Hackley,* 237 Md. 566, 207 A.2d 475 (1965), addressing the issue whether a motion picture theater was a storehouse, we construed Article 27, § 342, which makes it unlawful to break into a "shop, storehouse, tobacco house, warehouse, or other building, although the same be not contiguous to or used with any mansion house, . . ." and stealing money, goods or chattels under the value of $5.00

---

**5.** Section 33 refers to "storeroom," as opposed to "storehouse;" however, those terms are interchangeable. *Hardison v. State,* 226 Md. 53, 58–59, 172 A.2d 407, 409–10 (1961). *See Hagans v. State,* 316 Md. 429, 435, 559 A.2d 792, 794–95 (1989).

**6.** Maryland Code (1957, 1992 Repl.Vol.) Article 27, § 32 makes it a crime "to break a storehouse, filling station, garage, trailer, cabinet, diner, warehouse or other outhouse or into a boat with the intent to commit murder or a felony therein or with the intent to steal personal goods of another having the value of $100.00 or more."

or with intent to steal property under the value of $100.00. In concluding that it was, we reasoned:

We said in *Martin v. State,* 203 Md. 66, 75 [, 98 A.2d 8, 12–13 (1953)], that a factory, which was a type of building not mentioned in the statutes there involved, was included within the meaning of the term storehouse which was named in the statutes, because goods manufactured in the building were kept there for some period after being made ready for sale. Both in *Putnam v. State,* 234 Md. 537, 543 [, 200 A.2d 59, 62 (1964)], and *McLaughlin, Jr. v. State,* 234 Md. 555, 558 [, 200 A.2d 46, 48 (1964)], Chief Judge Brune for the Court, pointed out that Sec. 32 of Art. 27 dealt with breaking "a storehouse or *other outhouse*" (emphasis supplied) and we held in *Putnam* that a drugstore was an outhouse within the contemplation of Sec. 32 (and inferentially, within the contemplation of Sec. 342), and in *McLaughlin* that proof that a bowling alley was broken into was sufficient to sustain a verdict of guilty on an indictment which charged the breaking of a storehouse. In *Hardison v. State,* 226 Md. 53, 58 [, 172 A.2d 407, 409–410 (1961)], Judge Prescott, speaking for the Court, adopted a dictionary definition of storehouse ... and equated storeroom as used in Sec. 33 of Art. 27 with storehouse as used in Sec. 32. *See also Jones v. Hungerford,* 4 G & J, 402, 406 [ (1832)], which held that a schoolhouse, not parcel of a dwelling house, was an outhouse and suggested that all buildings other than dwellings were covered by the statute there involved, which made it a crime to burn a variety of specified buildings, "or other outhouse not parcel of any dwelling house." This is significant because *Putnam* and *McLaughlin* show that a storehouse as used in Sec. 32 is a form of outhouse and Sec. 32, after referring to a storehouse and other named buildings, refers to any "other outhouse." The term storehouse in Sec. 32 certainly is to be given the same meaning as it has in Sec. 32, since the difference between the two, on this aspect, is

only as to the .value of the personal property intended to be stolen.

*Id.* at 568–69, 207 A.2d at 476–77.

The foregoing makes clear that the building, itself, having been converted from residential to commercial use, is a storehouse. Whether the fact that two businesses, not identifiable as separate, share it for offices, makes the building two storehouses, rather than one, is quite another issue.

By its terms, § 33 contemplates that a conviction will lie only if the structure broken is an identifiable unit. While recognizing that the structures it specifically enumerates might be used in connection with, or be contiguous to, a "mansion house," the statute makes clear that they need not be. Moreover, the authorities which have defined "storehouse" have all done so in the context of units that are readily identifiable and distinct. That requirement is also implicit in the cases cited by the State for the proposition that more than one storehouse, or multiple uses, cognizable under the criminal law, may co-exist in a single building. These cases suggest that in order for a storehouse to be separate from any other, the space or structure must have its own clearly defined boundaries. Thus, in *Jones v. State*, 2 Md.App. 356, 234 A.2d 625 (1967), both a dwelling house and a storehouse co-existed in a three-story building, the dwelling house being separated from the storehouse by a flight of stairs. Similarly, in *Arnold v. State*, 7 Md.App. 1, 2–3, 252 A.2d 878, 879 (1969), it was held that the basement of a multi-family apartment building, used for tenant storage was a storehouse. In *Herbert v. State*, 31 Md. App. 48, 354 A.2d 449 (1976), the Court of Special Appeals pointed out that the separately designated rooms in a motel could be dwellings and storehouses.

Where there is a storehouse, in which, however, two separately owned businesses are operated by different persons, but their separate use is objectively either identical or closely related, the multiple occupancy and ownership do

not make one storehouse two; it is not the number of occupants or owners that defines or determines the number of storehouses. Multiple occupancy and ownership may, but need not, be significant factors in the determination of whether multiple storehouses exist in a single building. In any event, without more they are not definitive. *See Ingram v. State*, 137 Ga.App. 412, 224 S.E.2d 527, 529 (1976). *See also Arnold*, 7 Md.App. at 2–3, 252 A.2d at 879, in which the Court of Special Appeals found the basement of a multi-family apartment building, although it contained several storage bins for the residents, to be a storehouse. Thus, where two businesses, with different owners, operate in the same building from offices separated only by a hallway and a door and not otherwise identified as separate, there is only one identifiable unit, an office building; hence, there is but one storehouse. Without some means of identifying the offices of the businesses as separate the situation is not unlike that of a dwelling house: although several people live in the dwelling, occupying separate bedrooms, it nevertheless remains a single unit; the occupation of the separate bedrooms by different people does not constitute the dwelling a multiple one, for purposes of applying the proper unit of prosecution.

The foregoing principles are, as the petitioner notes, well illustrated by *Ingram v. State*, 137 Ga.App. 412, 224 S.E.2d 527 (1976). In that case, one of the issues was whether two burglary convictions could be sustained when a television set was removed from each of two adjoining, but separate motel rooms connected by an interlocking closed door. Rejecting the appellant's argument that only one conviction would lie, the court explained:

> The gravamen of the offense is breaking and entering with intent to commit a felony or theft. The evidence showed that each of the two rooms was broken into. Each of the two rooms had a television set taken therefrom. In the example of a house, there is only one breaking of one identifiable unit. In the case at bar, there were two breakings of two identifiable units,

Rooms 125 and 127. For example, assume a newly constructed but unoccupied apartment house with each of the separate units containing certain household appliances. Each apartment has the same owner. Each apartment has a distinct, identifiable number for identification. The breaking and entering and theft of household appliances from one apartment is one completed offense. The subsequent breaking and entering and theft of other apartments within the house, although done in succession, would each constitute a separate offense.

*Id.* at 529. *See also State v. Riely,* 523 A.2d 1225, 1226 (R.I.1987); *Maynard v. State,* 170 Ga.App. 683, 317 S.E.2d 666, 667 (1984).

We hold that occupying rented space, and using it as a business office, in a building in which another business office is located, but not separated in such a way as to make it objectively apparent that they are separate business offices, is not sufficient, under § 33, to render each business office a separate storehouse.

■ Section 33 prohibits breaking a storehouse and stealing property with a value of $5.00 or more. Necessarily, to violate the statute, a defendant must intend to break the storehouse. Unless it is objectively apparent that there are two or more storehouses in the building into which the defendant breaks, that one breaking can only constitute one violation of the statute.[7] In short, the location and opera-

---

7. This case should be contrasted with our recent case, *Richmond v. State,* 326 Md. 257, 604 A.2d 483 (1992). In that case, Richmond arranged to have the apartment of a co-worker set on fire. The fire spread to three other apartments. Richmond was charged with, and convicted of, three counts of procuring the burning of "dwelling houses", in violation of Maryland Code (1957, 1992 Repl.Vol.) Article 27, § 6. We affirmed the multiple convictions, holding that the burning of the three apartments were separate arson offenses for Double Jeopardy purposes. *Id.* at 269, 604 A.2d at 489. We concluded that Richmond need not have intended to burn each apartment, only that of his co-worker, in order to be guilty of the offense, because setting a fire in reckless and wanton disregard of the natural and probable consequences satisfied the wilful and malicious requirement of Art. 27 § 6. *Id.* at 268, 604 A.2d at 488–89.

tion, in a single building, an identifiable unit, of separate businesses, not readily identifiable as such, simply does not provide a sufficient predicate, for purposes of § 33, to support multiple convictions. Only if there is such a separation of the business offices in the building as to make it objectively apparent that they are separate can there be separate storehouses within the contemplation of § 33.

The State relies on *Brown v. State*, 311 Md. 426, 535 A.2d 485 (1988), *Cousins v. State*, 277 Md. 383, 354 A.2d 825 (1976) and *Jackson v. State*, 63 Md.App. 149, 492 A.2d 346 (1985), *rev'd on other grounds*, 305 Md. 631, 506 A.2d 228 (1986) to support its argument that but one breaking is necessary to sustain both convictions for storehouse breaking. These cases, which involve crimes of violence committed by a defendant against multiple victims, actually support our holding. In each case, it was objectively apparent that there were more than one victim; the number of identifiable victims defined the number of crimes. Here, too, the number of *identifiable* storehouses defines the number of convictions.

Having determined that, in this case, there was but one identifiable storehouse, the State's argument that, where there are multiple storehouses under one roof, a single breaking is sufficient to constitute a breaking of all of them is inapposite. So, too, is its argument that an internal breaking suffices to support the second breaking requirement in this case. Nevertheless, it is appropriate we think, to state the obvious: where there are two or more separate storehouses under a single roof, a single breaking will not suffice to constitute a breaking of each storehouse. *See Jones v. State*, 2 Md.App. at 360, n. 1, 234 A.2d at 627, n. 1. Unless each separate storehouse is separately broken, there

---

*Richmond* does not support affirmance of multiple storehouse breaking and stealing convictions where there has been but one breaking. In *Richmond,* the separate apartments were burned; the natural and probable consequences of procuring the burning of one apartment in an apartment building substituted for the specific intent to burn each apartment.

simply is no multiple storehouse breaking. Were it otherwise, absurd results would occur. The breaking requirement would be rendered, in a multiple use situation, a nullity. Obviously, the Legislature did not intend such a result.

JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED IN PART AND REVERSED IN PART. CASE REMANDED TO THE COURT OF SPECIAL APPEALS WITH DIRECTIONS TO REVERSE ONE OF THE STOREHOUSE BREAKING CONVICTIONS.

COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY PRINCE GEORGE'S COUNTY.