962 A.2d 998

Patrick G. McKENZIE

v.

STATE of Maryland.

No. 28, Sept. Term, 2008.

Court of Appeals of Maryland.

Dec. 30, 2008.

Amanda M. Downs, Assistant Public Defender (Nancy S. Forester, Public Defender, on the brief), Baltimore, for petitioner.

Jeremy M. McCoy, Assistant Attorney General (Douglas F. Gansler, Attorney General of Maryland, on the brief), Baltimore, for respondent.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY, ADKINS, and BARBERA, JJ.

BARBERA, J.

We decide in this case whether an apartment that is between tenancies is a "dwelling," as that term is used in Maryland's fourth degree burglary statute, Maryland Code

(2002), § 6–205(a) of the Criminal Law Article ("CL"). For the reasons that follow, we answer "yes" to that question, and, as a consequence, affirm the fourth degree burglary conviction of Petitioner, Patrick McKenzie.

## I.

Apartment 14 is located within the rental complex known as Pepper Tree Farm, in Montgomery County, Maryland. On September 4, 2007, the day in question, no tenant currently resided in that apartment. The most recent tenant had vacated the apartment two weeks earlier, and a new tenant had signed a lease and was scheduled to move into the apartment on September 5, 2007.

Petitioner was discovered in apartment 14 on September 4 by Kevin Leftwood, the service manager for the company that manages Pepper Tree Farm. Mr. Leftwood was at the time performing a routine check of the apartments that were about to be turned over to new tenants. When last he had checked apartment 14, the rooms were freshly painted, the carpet was replaced, and the appliances evidently were in working order.

Mr. Leftwood returned to the apartment on September 4 to ensure that the door keys and the lock on the mailbox worked, and the apartment was still in good condition for the new resident. As he approached the apartment, he noticed that the bottom of the front door and the door frame near the lock were bent. He entered the apartment and came upon Petitioner, who called out, "I told you all we should've got up." Mr. Leftwood asked Petitioner why he was there and received no response. Mr. Leftwood left the apartment and called 911.

While speaking with the police, Mr. Leftwood spotted Petitioner and two other men leaving the building. He followed the men and was able to provide the police with an immediate description of them and their location. The police responded and in short order arrested all three men. Mr. Leftwood returned to apartment 14 and observed cigarette burns on the carpet, stains on the ceiling of the dining room, and burn marks on the dining room wall.

Petitioner was charged with committing fourth degree burglary of a dwelling, fourth degree burglary of a storehouse, criminal trespass, and malicious destruction of property. He was tried before a judge of the District Court of Maryland, sitting in Montgomery County, who convicted him of fourth degree burglary of a dwelling and malicious destruction of property, and acquitted him of the remaining charges. Petitioner appealed the convictions and was tried de novo before a jury in the Circuit Court for Montgomery County. The jury found Petitioner guilty of burglary and acquitted him of malicious destruction of property. The court later sentenced Petitioner to three years' incarceration, with all but one year suspended, and two years of probation.

Petitioner filed a petition for writ of certiorari, presenting two questions:

I. Is an unfurnished, vacant apartment a "dwelling" within the meaning of Maryland Code, Ann., Criminal Law Art. § 6–205(a) (2002)?

II. Was the evidence sufficient to convict Petitioner of fourth degree burglary where the evidence established that he broke and entered an unfurnished, vacant apartment, which, at the time of the breaking, was unoccupied?

We granted the petition to decide both questions. *McKenzie v. State*, 405 Md. 63, 949 A.2d 651 (2008).

## II.

Fourth degree burglary of a dwelling, like the related crimes of burglary in the first, second, and third degrees, is a relatively new statutory offense in Maryland. Judge Orth, writing for the Court in *Warfield v. State*, 315 Md. 474, 554 A.2d 1238 (1989), recounted the early history of burglary and the evolution of the statutory offenses. Judge Orth noted that "[t]he common law felony of burglary crossed the seas from England and became a part of the common law of Maryland." *Id.* at 493, 554 A.2d at 1247. Burglary long retained its status as a common law offense, with its original common law meaning—"the breaking and entering of the dwelling house of

another in the nighttime with an intent to commit a felony." *Id.* at 493, 554 A.2d at 1248; *accord Reed v. State,* 316 Md. 521, 523 n. 1, 560 A.2d 1104, 1105 n. 1 (1989). Over the years, however, the General Assembly enacted a hodgepodge of burglary-related statutes. *See Warfield,* 315 Md. at 493–94, 554 A.2d at 1248.

In its first iteration as a statutory offense, burglary in the fourth degree was part of the General Assembly's 1994 codification of what previously were common law burglary and the statutory burglary-related offenses. *See* 1994 Laws of Maryland, ch. 712, § 2. Re-codified without substantive change in 2002 as CL § 6–205, burglary in the fourth degree embraces four varieties of proscribed behavior. That section reads:

(a) *Prohibited—Breaking and entering dwelling.*—A person may not break and enter the dwelling of another.

(b) *Same—Breaking and entering storehouse.*—A person may not break and enter the storehouse of another.

(c) *Same—Being in or on dwelling, storehouse, or environs.*—A person, with the intent to commit theft, may not be in or on:

(1) the dwelling or storehouse of another; or

(2) a yard, garden, or other area belonging to the dwelling or storehouse of another.

(d) *Same—Possession of burglar's tool.*—A person may not possess a burglar's tool with the intent to use or allow the use of the burglar's tool in the commission of a violation of this subtitle.

(e) *Penalty.*—A person who violates this section is guilty of the misdemeanor of burglary in the fourth degree and on conviction is subject to imprisonment not exceeding 3 years.

(f) *Conviction of theft.*—A person who is convicted of violating § 7–104 of this article may not also be convicted of violating subsection (c) of this section based on the act establishing the violation of § 7–104 of this article.

We are concerned in the case at bar only with the first variety of fourth degree burglary—breaking and entering the

dwelling of another—and, more particularly, with the meaning of the term "dwelling." Plainly, "dwelling" is not defined in CL § 6–205. Neither is it given a definition in CL § 6–201, the "Definitions" section of the "Burglary and Related Crimes" subtitle. Subsection (e) of CL § 6–201 merely provides: "*Dwelling.*—'Dwelling' retains its judicially determined meaning except to the extent that its meaning is expressly or impliedly changed in this subtitle." We therefore must look to case law to ascertain the meaning of the term.

Although we have not held in any case precisely what is meant by a "dwelling" insofar as the crime of burglary is concerned, the Court of Special Appeals has discussed the term in various opinions on the subject. We shall examine those cases later in this opinion. Preliminarily, however, we address Petitioner's suggestion during oral argument that the meaning of "dwelling," for purposes of fourth degree burglary, is limited to the various definitions given that term in the Court of Special Appeals' case law predating the 1994 codification of the burglary offenses.

Even were we to assume that the Court of Special Appeals' opinions predating the effective date of statutory burglary could establish, without comment or decision by the Court of Appeals, the universe of what constitutes "the judicially determined meaning" of the term "dwelling," we are not precluded from further clarifying its meaning, in this opinion or others in the future. The Committee Note of the Committee to Revise Article 27, appended to the original version of the "Definitions" section, *see* Md.Code (1957, 1996 Repl.Vol.), Art. 27, § 28, makes that point clear. The Note begins:

> The meaning of the terms "break," "enter," and "dwelling" have been extensively developed at common law and in Maryland case law. Therefore, the Committee believes that these terms should retain their judicially determined meanings. More specifically, the Committee believes that the terms "dwelling," "break," and "enter" should retain the meanings that have been ascribed to these words by the

judges in cases interpreting the elements of the common law crime of burglary.

The Note ends:

The Committee does not intend that this bill limit or "freeze" further development of the meaning of the terms "break," "enter," "dwelling" and "storehouse" in case law. Rather, the Committee expects that the meaning of these terms will continue to be clarified as appropriate in future case law.

We set forth the above excerpts from the Committee Note fully cognizant that it is "not law." *See* 1994 Laws of Maryland, ch. 712, § 4. Yet, we have not hesitated in the past to consider such notes to be strong evidence that, if a term "retains its judicially determined meaning," it is subject to continued clarification in case law. *See Robinson v. State,* 353 Md. 683, 697–98, 728 A.2d 698, 704–05 (1999) (looking to the Committee Notes of the Committee to Revise Article 27 concerning the 1996 codification of assault in two degrees, and recognizing that, although those notes are not law, they are "persuasive evidence of the legislative intent to abrogate common law assault and battery"); *Boffen v. State,* 372 Md. 724, 731–32, 816 A.2d 88, 92 (2003) (looking to the Committee Notes of the Committee to Revise Article 27 for direction in deciding what constitutes an escape, in light of the statutory definition that " '[e]scape' retains its judicially determined meaning"). As we did in *Robinson* and *Boffen,* we view the Committee Note annotating CL § 6–201 as persuasive evidence that the General Assembly intended the meaning of "dwelling," insofar as the burglary statutes are concerned, to be subject to ongoing clarification in the case law. We now turn to that task.

"[I]f a term such as 'dwelling house' is not otherwise defined by statute, the common law meaning is assumed to be intended." *Richmond v. State,* 326 Md. 257, 264 n. 4, 604 A.2d 483, 486 n. 4 (1992). We have mentioned that, at common law, burglary was a felony that proscribed "the breaking and entering of the dwelling house of another in the nighttime with

an intent to commit a felony."[1]  *Warfield,* 315 Md. at 493, 554 A.2d at 1248.  Common law burglary and, by extension, Maryland's statutes prohibiting burglary of the "dwelling of another," are crimes against habitation.  *See* W. Blackstone, 4 *Commentaries* \* 169;  Rollin M. Perkins & Ronald N. Boyce, *Criminal Law,* ch. 3 § 1 at 255–56 (3d ed.1982) (hereinafter Perkins);  Wayne R. LaFave & Austin W. Scott, *Substantive Criminal Law,* § 8.13(c) at 469 (1986) (hereinafter LaFave). Because the law of burglary protects the dweller, it focuses not on ownership, but on occupancy.  Perkins, *supra,* at 261; *accord* LaFave, *supra,* at 470 (stating that, because at common law it "was the right of habitation and not the ownership of property that was being protected, occupancy controlled the question of whether the dwelling was that of another").

To be a dwelling, the place must be of human habitation, LaFave, *supra,* at 469, that is, a "place to sleep in," Perkins, *supra,* at 256.  A structure does not become a dwelling until someone occupies it.  *Id.* at 258.  Once a dwelling, however, the structure does not lose its character as a dwelling simply because it is left vacant for a time.  *See* Perkins, *supra,* at 258–59;  *see also* LaFave, *supra,* at 469 (stating that, "[i]f the place is one of human habitation, there is no requirement that a person be present therein at the time of the offense").  The length of the vacancy, moreover, does not, of itself, disturb the character of the place as a dwelling.  "Certain it is that the dweller and his entire household may be away for months, without depriving the house of its character as his dwelling." Perkins, *supra,* at 259.

The common law recognizes that "[t]here may be more than one dwelling under the same roof and this applies not only to apartment houses and similar structures but also to buildings

---

1. Maryland's statutory offense of burglary in the first degree is most akin to common law burglary, without the element of "in the nighttime."  *See* CL § 6–202 (providing: "A person may not break and enter the dwelling of another with the intent to commit theft or a crime of violence").  Burglary in the third degree has similar elements, but requires the intent that accompanies the breaking and entry of the dwelling of another be simply to "commit a crime."  *See* CL § 6–204.

of similar types." *Id.* at 257. "Each apartment in a tenement house is 'the dwelling house of the particular occupant,' but even a single room in a private house or a hotel may be the dwelling of the occupant if it is actually the place where such person lives." *Id.* Moreover, "[i]f a house is habitually used as a place where persons sleep, it is properly to be regarded as a dwelling even if no one who lodges there has a sufficient interest therein to establish it as *his* dwelling." *Id.* at 262–63 (emphasis in original). Therefore, "a hotel is a dwelling house even if all the inmates are transients, and the proprietor and his family and servants all sleep elsewhere."[2] *Id.* at 263.

No case of this Court provides a test for determining what is a dwelling, for purposes of Maryland burglary law. But we have had occasion to comment on the common law meaning of the term, and we have recognized that separate apartments in a single structure are separate dwellings. In *Richmond*, 326 Md. at 265–66, 604 A.2d at 487, an arson case, we stated that the meaning of "dwelling house" was the same as its common law meaning for burglary purposes, and we held that, when the Petitioner set a fire in one apartment that led to the burning of two other apartments in the same building, he committed three acts of arson of a dwelling house.[3] And in *Bane v. State*, 327 Md. 305, 315, 609 A.2d 313, 318 (1992), a case involving whether separate spaces in a building devoted to commercial use qualified as separate

---

**2.** Perkins writes that a room in a larger building, say, an apartment building, tenement house, or inn, may be the dwelling of its particular occupant, while a room that houses a guest in a private home or a transient in a hotel remains a part of the dwelling of the host or innkeeper. "And for most purposes it is unimportant whether it is one or the other except as a matter of procedure,—to charge properly whose dwelling was broken into." Perkins, *supra*, ch. 3 § 1 at 257. The only substantive issue concerning the identity of the "dweller" is that he or she not be the person accused of the breaking and entry. *Id.*

**3.** In 1993, the year after *Richmond* was decided, the General Assembly adopted a statutory definition of dwelling, for purposes of arson, as a "structure, regardless of whether an individual is actually present, any portion of which has been adapted for overnight accommodation of individuals." *See* Md.Code (1957, 1996 Repl.Vol.), Art. 27, § 5(b).

storehouses, we commented that, "[w]ithout some means of identifying the offices of the businesses as separate the situation is not unlike that of a dwelling house: although several people live in the dwelling, occupying the separate bedrooms, it nevertheless remains a single unit ... for purposes of applying the proper unit of prosecution." Although neither of these cases directly addresses the issue presented in the case at bar, both stand for the notion that a single building can contain more than one dwelling, if, as with the case of apartments, the spaces are separately identified as such.

The Court of Special Appeals, unlike this Court, has had numerous occasions to grapple with whether a structure or separately identified space within a structure is a "dwelling." In *Jones v. State*, 2 Md.App. 356, 361–62, 234 A.2d 625, 628 (1967), the intermediate appellate court affirmed a conviction for storehouse breaking of a part of a building that was occupied by the Chesapeake Club, Inc., notwithstanding that another part of the building was used as an apartment. And, in *Buckley v. State*, 2 Md.App. 508, 511, 235 A.2d 754, 756 (1967) (per curiam), the court held that a building, "originally designed as a dwelling," was a warehouse for purposes of the statute proscribing breaking and entering a warehouse, because no person resided or was domiciled there, and the building was used only as a meeting and recreational facility.

Those cases were followed by *Poff v. State*, 4 Md.App. 186, 241 A.2d 898, *cert. denied*, 251 Md. 751 (1968). *Poff* involved a vacant apartment that the court described as having been "rented" only by the police "for the obvious purpose of setting a trap" for the subject of its sting operation. The court looked to the common law commentators and extracted from those authorities the following test for determining what constitutes a "dwelling house:" "The test as to whether or not a building is a 'dwelling house' is whether or not it is used regularly as a place to sleep. No building becomes a 'dwelling' by reason of the fact that someone may sleep there on rare occasions or take an occasional nap there[.]" *Id.* at 189, 241 A.2d at 900. Without further elaboration, the court affirmed Poff's conviction of storehouse breaking, stating that it had "no difficulty in

concluding that, in fact, [the apartment] was not a 'dwelling' but simply a place in which furniture was stored pending its rental by a new tenant." *Id.* We shall discuss later why, to the extent that *Poff* can be read as holding that an apartment between rentals loses its character as a dwelling, that decision is wrong.

The next year, the Court of Special Appeals decided *Arnold v. State,* 7 Md.App. 1, 252 A.2d 878 (1969). One question in that case was whether the appellant was properly convicted of storehouse breaking, after taking a tire from a storage bin located in the basement of an apartment building. The court rejected the notion that the space was a dwelling simply because the bin was used by the several families who resided in the apartment. The court held that "the basement of an apartment house, not occupied by the owner, is a storehouse and not a dwelling." *Id.* at 3, 252 A.2d at 879.

The following year, the court decided *Marston v. State,* 9 Md.App. 360, 264 A.2d 127 (1970). The question in that case was whether a "furnished" house, in which the owner had never lived and indicated clearly she never intended to live, was a dwelling when it was entered by a person and his co-defendant brother. The co-defendant had previously resided in the building for several months while working on it, and evidently had been its only occupant. *See id.* at 363, 264 A.2d at 128–29. The court concluded that the building was not a dwelling at the time of the breaking and entry:

In the instant case, there must have been occupancy by someone other than the appellant or his brother, Donald Marston, before the conviction [of burglary] may be affirmed. If the occupancy is by appellant or by his codefendant, then the dwelling becomes their dwelling, and at common law one could not be guilty of burglary of his own dwelling. If the dwelling is used as the constructive dwelling of [its] owner, because she allowed her servant, Donald Marston, to sleep there, then the use as a house terminated in November, 1968, when [the owner] evicted Donald Marston and later instituted judicial process to recover the keys from him. Thus the constructive dwelling of the owner, if

any, had clearly terminated approximately three months before the present crime. Thus, at the time of the breaking, the owner was not living in the building herself, and specifically had not authorized anyone, including the Marstons, to sleep there. In view of these facts, the building is not a dwelling as defined in *Poff v. State, supra.* The fact that Donald Marston occasionally slept in this building [after he had been directed by the owner to desist from sleeping there] does not convert it into a dwelling house, since by *Poff,* the mere fact that one sleeps there "on rare occasions" does not convert the building into a dwelling.

*Id.*

The *Marston* court recognized, moreover, the distinction "between a temporarily unoccupied building that is in fact regularly used as a dwelling with a building which has been abandoned as a dwelling. The former is a proper subject of burglary; the latter is not." *Id.* at 364, 264 A.2d at 129.

*Herbert v. State,* 31 Md.App. 48, 354 A.2d 449 (1976), followed *Marston* by six years. The defendant in that case was convicted of burglary of one room of a motel complex, which at the time in question was rented, and of attempted storehouse breaking of a second room of the motel, which was not rented at the time. The intermediate appellate court held that both motel rooms were dwellings, even though the latter was not rented when Herbert tried to break into it. *Id.* at 52, 354 A.2d at 451–52. The court reasoned:

But for the fact that room 66 was rented that evening, the State produced no evidence at Herbert's trial that room 76 [the room not rented that evening] was used for different purposes than room 66. Both seem to be ordinary rooms designed and used for the same purpose. It is apparent that either both rooms are "dwellings" or both are "other buildings" under the storehouse breaking statutes.

*Id.* at 51, 354 A.2d at 451.

The court concluded: "The State produced evidence from which it could be inferred that the motel complex was utilized for overnight sleeping accommodations by paying guests and

thus met its burden of proving the 'dwelling house' element of burglary beyond a reasonable doubt[.]" *Id.* at 52, 354 A.2d 449. Therefore both motel rooms were dwellings, for burglary purposes. *Id.*

*Kanaras v. State,* 54 Md.App. 568, 460 A.2d 61, *cert. denied,* 297 Md. 109 (1983), involved a murder during a daytime housebreaking. The court addressed whether a recreation vehicle was a dwelling for purposes of the daytime house-breaking statute. Recognizing that the term must be "construed in light of the common law," the court examined its previous opinions on the subject, relevant common law commentary, and cases from other jurisdictions. *See id.* at 581–85, 460 A.2d at 69–71. The court reasoned that the "crucial factor" is "whether [the structure] is a place intended to be used, and in fact is used, as an abode and place for humans to sleep." *Id.* at 586, 460 A.2d at 71. The court added: "The paramount interest that [the daytime housebreaking statute] seeks to protect is the right of human habitation to be free from the terror of an invader. Accordingly, it matters not what type of facility the individual chooses to use for his habitation, so long as he intends it to be his abode and so uses it." *Id.* The court held that, under the facts presented, the recreation vehicle in which the murder victim resided was a dwelling. *Id.* at 587, 460 A.2d at 72.

More recently, in *Wallace v. State,* 63 Md.App. 399, 492 A.2d 970 (1985), the Court of Special Appeals applied the *Poff* test to hold that a house permanently abandoned by the tenants was not a dwelling, for purposes of the statutes proscribing breaking and entering a dwelling house and day-time housebreaking. *Wallace* involved a structure that, by the time of the breaking and entering, had lost its character as a dwelling; the structure was no longer "used *regularly* as a place to sleep." *Id.* at 405, 492 A.2d at 974 (emphasis added) (quoting *Poff,* 4 Md.App. at 189, 241 A.2d at 900). The *Wallace* court was careful to distinguish the character of the structure at issue in that case from a structure that is regularly used as a place for sleeping, but is temporarily unoccupied:

To be sure, burglary does not require that the dwelling be occupied by its residents at the time of the breaking; however, the law distinguishes a temporarily unoccupied dwelling house from a building such as [the house at issue in *Wallace]* which, although at times used as a dwelling, has at the time of the breaking *been abandoned by its occupants.* "The former is a proper subject of burglary; the latter is not."

*Id.* at 407, 492 A.2d at 975 (quoting *Marston,* 9 Md.App. at 364, 264 A.2d at 129) (emphasis added).

Of course, the holdings of the Court of Special Appeals in the opinions we have discussed cannot be divorced from the facts presented in those opinions. Even so, most of the opinions support the conclusion that the apartment at issue in the case at bar was a dwelling at the operative time. Much like the unrented motel room at issue in *Herbert,* the apartment in the present case, though unoccupied at the time, was intended by its owner to be occupied by a paying tenant. Furthermore, consistent with the holdings of *Buckley, Marston,* and *Wallace,* the apartment at issue in the present case was not abandoned, nor had its use changed from that of a place of habitation. And though we believe the Court of Special Appeals mistakenly implied in *Poff* that the apartment in that case was not a dwelling because it did not at the time have a tenant, we have no quarrel with the *Poff* court's description of a dwelling as a place "used regularly as a place to sleep." The holdings of the Court of Special Appeals' cases, moreover, are generally consistent with the common law commentaries we have discussed, all of which indicate that the apartment at issue in the case at bar qualified as a dwelling, for burglary purposes.

The New Jersey Supreme Court came to that exact conclusion when faced with similar facts in *State v. Scott,* 169 N.J. 94, 776 A.2d 810 (N.J.2001). In that case, the defendant unlawfully entered an apartment in a rental complex. The apartment, which had been vacant for nearly four weeks, contained carpeting, plumbing, and appliances, and was being prepared for rental. *Id.* at 97–98, 776 A.2d at 811–12. A jury

convicted the defendant of the statutory offense of fourth degree criminal trespass, which, in the words of the court, meant that the jury had "necessarily determin[ed]" that the apartment was a "dwelling." *See id.* at 97–98, 776 A.2d at 812. The court noted that the legislative history of the statute at issue "makes clear that a 'structure' currently need not be occupied to be a 'dwelling.' Beyond that, however, the Legislature has not defined 'dwelling,' at least not within the context of the criminal trespass statute." *Id.* at 99–100, 776 A.2d at 813.

The court therefore turned to the common law definition of the term, pointing out that "New Jersey common law defines 'dwelling' as 'a place where a person resides and sleeps.' " *Id.* at 100, 776 A.2d at 814. Based on that definition, the court stated, "there can be little doubt that rental units, including apartments, generally fall within the common-law definition of dwelling." *Id.* The court observed that "[v]acation homes, cabins, seasonal cottages, and similar residences are appropriate analogues to a vacant apartment because they are generally maintained during the off-season vacancy, and are to be occupied after the period of the vacancy." *Id.* Further, "[b]ecause the owners or others are likely to return to a vacation home, the common law recognizes the possibility that someone may be present at the time of an unlawful entry, thereby establishing the vacation home as a 'dwelling.' " *Id.*

The court reasoned that "the critical inquiry regarding rental apartments is whether the unit is available and suitable for rent." *Id.* at 102, 776 A.2d at 815. The court explained that, "[i]n between rentals, the presumption is that the apartment is maintained by a landlord who is seeking new tenants. If those facts are proven, the apartment is a dwelling for purposes of the criminal trespass statute." *Id.* The court noted, too, that "[r]ental apartments are designed for and operated with an eye toward full occupancy." *Id.* So, though "there may be periods of time between occupancies, the nature of apartment units reinforces the substantial likelihood that people will be returning to inhabit the rental unit at any given time, as in the case of a vacation home." *Id.* The court

therefore held that "an unoccupied apartment that is between rentals, but is suitable for occupancy is a 'dwelling' for purpose of the criminal trespass statute." *Id.*

The decisions of other courts are to like effect. *See People v. Pearson*, 183 Ill.App.3d 72, 131 Ill.Dec. 646, 538 N.E.2d 1202, 1202–03 (1989) (stating that Illinois's statutory definition of dwelling [4] included a partially furnished but vacant rental home, into which new tenants were scheduled to move in three days, and holding that, for a structure to be a dwelling, "[a]n identifiable owner or occupant coupled with the requisite intent is all that is required by the statute"); *Houston v. Municipality of Anchorage*, 59 P.3d 773, 774, 776 (Alaska Ct.App.2002) (holding that an apartment from which a landlord had evicted the defendant retained its character as a dwelling when the defendant broke into it the following day).

We adopt the reasoning and holding of the New Jersey Supreme Court in *Scott*, which is generally in line with the Court of Special Appeals' opinions we have discussed. We agree that rental apartments are designed and generally operated with the goal of continuous occupancy. And, though there may be times when an apartment is not rented, there is "the substantial likelihood that people will be returning to inhabit the rental unit at any given time, as in the case of a vacation home." *Scott*, 776 A.2d at 815. We therefore hold that an unoccupied apartment that is between rentals, but is suitable for occupancy, is a "dwelling" for purpose of statutory burglary. To the extent that any of the case law developed in the Court of Special Appeals intimates to the contrary, it is hereby overruled to that extent.

### III.

Having decided that a vacant apartment, between rentals, is a dwelling for burglary purposes, it remains only for

---

**4.** The Illinois statute defines dwelling as "a house, apartment, mobile home, trailer, or other living quarters in which at the time of the alleged offense the owners or occupants actually reside or in their absence intend within a reasonable period of time to reside." Ill.Rev. Stat.1987, ch. 38, par. 2–6(b).

us to decide whether the evidence offered at Petitioner's trial was legally sufficient to sustain his conviction of fourth degree burglary of a dwelling. The test is whether, after viewing the evidence "in the light most favorable to [the State], *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979); *accord Rivers v. State,* 393 Md. 569, 580, 903 A.2d 908, 915 (2006). Applying that test to the facts of this case is an easy one, since it is undisputed that apartment 14 was between tenancies and suitable for occupancy, and Petitioner broke and entered it. Accordingly, we affirm the conviction.

**JUDGMENT AFFIRMED. COSTS TO BE PAID BY PETITIONER.**